HEZEKIAH LINTHICUM
vs.
WESLEY LINTHICUM. ⎬ SEPTEMBER TERM, 1849,

[PAROL PROOF—CANCELLING OF BOND.]

UPON a bill filed by an obligor, in a sealed note against the executor of the obligee, the note was decreed to be cancelled upon proof that the testator did not intend to exact payment of the money due upon it, but originally intended it as a gift, or afterwards treated it as such, and abandoned it as a debt,—although this proof consisted entirely of the parol declarations of the testator, unaccompanied by any other statements, or papers of any description.

Authorities on this subject reviewed and considered.

Cases of this description distinguished from gifts *inter vivos,* and *donationes mortis causa,* to perfect which, there must be an actual delivery according to the manner in which the particular thing, the subject of the gift, is capable of being delivered, and without which delivery, the gift is invalid, both at law and in equity.

This decree, being against an executor, who is acting simply in the proper discharge of his office, will be without costs.

———

THE CHANCELLOR :

This is a bill, asking that a sealed note given by the complainant, on the 2nd of October, 1843, to Slingsby Linthicum, deceased, for $623,91, may be given up to be cancelled.

The bill is filed against the executor of the obligee, who admits that the assets of the testator, independent of the single bill, are quite sufficient to pay all the claims of creditors.

The proof taken under the commission shows, I think, satisfactorily, that the testator did not intend to exact payment of the money due upon this instrument, that he either intended it originally as a gift, or that he afterwards treated it as such, and abandoned it as a debt. The answer of the executor in fact, proves, that the testator did not regard the whole sum expressed in the note as a debt, and looking to the relation in which the parties stood to each other, (father and son), and at the transaction in which the claim originated, I am strongly persuaded, the testator did not in the first instance, design to claim payment of the whole debt, or that he afterwards, for reasons satisfactory to himself, thought fit to forgive it to his son.

The question then is, whether this court can, consistently with the cases which have been decided upon the subject, order this note to be given up to be cancelled.

The difficulty grows out of the quality of the proof, being only of the parol declarations of the testator, unaccompanied by any other statements, or papers of any description.

In the case of *Byrn vs. Godfrey,* 4 *Ves.,* 6, the Lord Chancellor expressed a strong disinclination to the introduction of parol proof, but still, I think the inference is a very fair one, that if the assets of the testator had been sufficient, without the bond sought to be surrendered, to pay debts and legacies, he would have given effect to the proof.

In *Reeves vs. Brymer*, 6 *Ves.*, 516, there was no evidence of the alleged release, except the evidence of the obligor himself, though the Master of the Rolls expressed a doubt, whether the statement of the obligor, if proved, would amount to evidence of a release.

But the case of Reeves vs. Brymer differs from that now under consideration, in two respects, which may be regarded as material. It was the case of a bond given upon an actual loan of money, between persons standing in the relation of strangers to each other, whilst in this case, the parties are father and son, and the transaction with which the note in question is connected, seems to have been a family arrangement, entered into for the benefit of the son.

The case of *Eden vs. Smyth*, 5 *Ves.*, 341, was decided upon the evidence of accounts, letters and memoranda, in the testator's hand writing, to which the Lord Chancellor, gave effect by decreeing that the bonds of the plaintiff in that case, should not be the subject of demand against him.

The case of *Wickett vs. Naby*, 3 *Bro. R. C.*, 16, though declared by Judge Story to have carried this doctrine to the utmost verge of the law, seems nevertheless, to have received the sanction of subsequent authorities ; and if now to be regarded as a safe guide upon this branch of the law, is entitled to great weight in the consideration of this case. The declarations of the testator in that case, which were verbal, were made to his executor, and though they were regarded as totally insufficient as a *donatio mortis causa*, were held adequate to establish an intention, that the bond should be released.

The case of *Flower vs. Marten*, 14 *Con. Eng. Ch. Rep.*, 459, proves, that the court may from parol evidence infer, either that a bond was not originally intended to operate as a security at all events ; or if the proof leaves that doubtful, that the obligee's subsequent conduct, and mode of dealing with the bond, may amount in equity to a release of the debt secured by it.

This last case is strong in favor of the relief sought by the present bill.

The single bill in this case, from the complainant to his father, was given in 1843,—the latter lived until 1848, during

which time he·not only made no attempt to enforce its payment, but made declarations to the effect that he had forgiven his son the debt.

Cases of this description have no affinity with, and are to be carefully distinguished from, purely voluntary contracts or gifts *inter vivos*, or donations *mortis causa*, which cannot be maintained, if the gift is imperfect, by the retention by the donor, of the legal power and dominion over the subject. To make a *donatio inter vivos*, or *donatio mortis causa* good, there must be an actual delivery, according to the manner in which the particular thing, the subject of the gift, is capable of being delivered. If this is wanting, the gift is invalid, at law and in equity.

*Pennington vs. Gittings*, 2 *G. & J.*, 208.

But the case now under consideration, and all similar cases, are placed upon the ground, that the transaction is exclusively between the creditor and debtor, and in view of all the circumstances, that the intention of the creditor is clearly indicated, that the debt should be forgiven, and released to the debtor himself.

2 *Story's Equity*, section 706, (a).

Now in this case, I am quite convinced, that the father of the complainant did intend to forgive and release his son from the payment of this debt, and being so convinced, I consider it my duty to decree the delivery up, and cancellation of the bond, the evidence of that debt. But the case being against an executor, who is acting simply in the proper discharge of his office, the decree will be without costs.

E. HAMMOND for plaintiff.

J. S. TYSON for defendant.