## DE HIERAPOLIS v. REILLY et al.

(Supreme Court, Appellate Division, First Department.   October 20, 1899.)

1. CREDITORS' SUIT—ASSIGNMENT IN CONSIDERATION OF PROMISE TO MARRY.
Where a woman, in good faith, makes a promise to marry, conditioned on the assignment to her of a fund by the man she promises to marry, she takes the fund as a purchaser in good faith and for valuable consideration, though the man in making the contract did so with the intention of defrauding his creditors.

2. SAME—STATUTE OF FRAUDS.
The statute of frauds cannot be availed of to set aside a completed transaction.

3. CONTRACT OF MARRIAGE—CONSIDERATION.
Where a party promises to marry in good faith and for a consideration, he or she is entitled to the consideration for such promise, and if, without fault upon his or her part, the marriage does not take place, it does not affect the title to the consideration.

Appeal from special term, New York county.

Action by Emilie S. De Hierapolis against John B. Reilly, Jr., and others. There was a judgment dismissing plaintiff's complaint, and dismissing the counterclaim of defendant Richard E. Carpenter. From this judgment plaintiff and defendant Carpenter appeal. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and O'BRIEN, JJ.

Nelson Smith, for appellant De Hierapolis.
A. G. N. Vermilya, for appellant Carpenter.
Hugo Hirsh, for respondent Larkin.
W. C. B. Thornton, for respondent Reilly.

VAN BRUNT, P. J.   This action was brought by the plaintiff, as judgment creditor of the defendant John B. Reilly, Jr., with execution returned unsatisfied, to set aside a certain assignment made on the 2d of April, 1898, by said Reilly to the defendant Bessie Larkin of a fund belonging to him, and which was on deposit in the Kings County Trust Company, on the ground that such assignment was made with intent to hinder, delay, and defraud creditors. The defendant Carpenter was made a party to this action, he having obtained an attachment which was attempted to be levied on the fund of said John B. Reilly, Jr., in the hands of the Kings County Trust Company. The learned court found from the evidence in this case that:

"In April, 1895, being then under the age of 21 years, he asked the defendant Bessie Larkin to marry him at a future time. The defendant Bessie Larkin promised and agreed so to do on condition that he would make to her a valid transfer of the said fund on deposit in the Kings County Trust Company. To this Reilly agreed, and a valid and binding contract to marry was entered into between them. On the day that the defendant Reilly became of age, to wit, on April 2, 1898, he, in fulfillment of his promise above mentioned, assigned to the defendant Bessie Larkin the fund above mentioned. The marriage has not yet taken place, but the contract therefor is still in existence, and in full force and effect, and the defendant Larkin is ready and willing to carry out the same. Between April, 1895, when the said engagement to marry was entered into, and April, 1898, when the assignment of the

fund was actually made, the defendant Reilly, who was still under the age of 21 years, had incurred obligations to the plaintiff and the defendant Carpenter. The defendant Larkin had no knowledge of the defendant Reilly's indebtedness at the time she received and accepted the assignment of said fund. That the defendant Reilly, in making said transfer of said fund to the defendant Larkin, did so for the purpose of carrying out his agreement of April, 1895. That the promise to marry given by the defendant Larkin to the defendant Reilly was a good and valid consideration for his promise to transfer said fund to her, and for the subsequent transfer thereof. That, by the making and delivery of said assignment to the defendant Larkin, she became the owner of said fund on deposit in the Kings County Trust Company, and entitled to hold the same as against the whole world."

This conclusion of the court is attacked upon the ground that the defendant Reilly, in making the assignment, made the same with intent to hinder, delay, and defraud creditors, and that the defendant Bessie Larkin was privy to such intention; and, further, that, if there was any agreement to marry upon the part of the defendant Larkin conditioned upon Reilly's transfer of this fund to her, such promise was within the statute of frauds and void. Whatever may have been the intention of Reilly in making this assignment, if the defendant Larkin was ignorant of that intention, and gave the promise to marry in good faith, conditioned upon the assignment of this fund, and it was thereupon, in pursuance of that agreement, assigned to her, under all the cases she became a purchaser in good faith for a valuable consideration.

It is further claimed, as above stated, that the promise to transfer this fund, not being in writing, was within the statute of frauds, and therefore void. It is difficult to see how the statute of frauds can be availed of to set aside a completed transaction. Even if the defense were good, that the statute of frauds would defeat the defendant Larkin in an attempt to enforce the agreement, the agreement having been carried out the statute of frauds can be of no avail. Indeed, it is difficult to see, in this respect, why the plaintiff and the defendant Carpenter do not stand in precisely the same condition as to the validity of their contracts. If the defendant Larkin's right to claim a transfer was void by the statute of frauds, the indebtedness contracted by Reilly to the plaintiff and defendant Carpenter was void because of infancy, and it was only because of his acknowledgment of the indebtedness, or his failure to repudiate it, after he became of age, that they were able to maintain their judgments and have any standing in court. If their contracts were good by reason of Reilly's confirmation when he became of age, why could not he confirm his agreement with the defendant Larkin, by carrying it out, as he did?

There is no evidence in this case which would justify the court in holding that the defendant Larkin acted in bad faith, or that she had any knowledge of the fraud perpetrated by Reilly upon the plaintiff and the defendant Carpenter. The fact that Reilly gave to the defendant Larkin certain jewelry, which had been obtained by him by fraud from the plaintiff, was a confirmation of the relations which are alleged to have existed between them, and the fact that she wore the same in no way imported any knowledge on her part that he had obtained the same by fraud, as is claimed by the plaintiff.

It is further claimed that there is no evidence of a renewal of the promise on the 2d of April, 1898, when the assignment was made, nor that the assignment was executed in pursuance of the promise which had been previously made. It seems to us that where there is evidence that a party has agreed to do a thing upon the happening of a certain event, and the event happens, and he does it, the reasonable construction is that he has done it in pursuance of the promise, although nothing was said at the time as to the reasons for the act.

The defendant Carpenter claims that whatever were the rights of Miss Larkin, after the Carpenter attachment was levied, in her intense desire to get, at least, some portion of the fund in her hands, she signed a form of order, substantially in the nature of a stipulation, as a consequence of the entry of which she would receive about the sum of $1,300, and Carpenter would be entitled to the payment of his claim out of the fund in preference to herself. We have examined the record in vain to find any such order or consent. Even the supposed order copied in the appellants' points fails to carry out this intention; but no reference is given to any folio of the case where any such order is contained, and we are unable to find it.

The counsel for the appellants have cited a number of cases in the English courts which lay down the rule that where a prenuptial settlement is made, and no marriage takes place or would be lawful, then the settlement is void. This is undoubtedly true, because the settlement has for its consideration the promise to marry, which could only be fulfilled in case the parties were able to contract a lawful marriage. But, where one of the parties has entered into an agreement to marry in good faith, he or she is entitled to the consideration for such promise, and if, without fault upon his or her part, the marriage does not take place, it does not affect the title to the consideration.

We think, under the circumstances, that the judgment should be affirmed, with costs. All concur.