ELLA F. GUILD vs. EASTERN TRUST AND BANKING COMPANY et al.

## Penobscot.    Opinion May 11, 1923.

*A promise in consideration of marriage, or a promise in consideration of an engage-*
*ment of marriage, is within the Statute of Frauds and not enforceable unless in*
*writing.    But a promise to marry is not within the Statute of Frauds, and is*
*enforceable without being in writing.    An oral promise to pay money*
*in consideration of a marriage promise is not enforceable, but a*
*written promise to pay money in consideration of an oral*
*marriage promise, like a check, is valid and enforceable.*
*Any contract not required to be in writing may be*
*complete without words.    A promise to marry*
*need not be express.    It may be*
*implied.*

1.   As between the drawer of a check and the drawee (bank) the check is an authorization to pay the amount of it out of the drawer's funds on deposit. If the drawer has not a sufficient deposit to meet the check, it authorizes payment and impliedly agrees to make reimbursement.

2.   The authority may be revoked at any time before payment or acceptance. The revocation may be express.    The drawer may "stop payment."    The death of the drawer operates as a revocation and justifies the bank in withholding payment.

3.   But as between the drawer and payee the check contains an implied promise that upon presentment the instrument will be accepted or paid or both, and that if dishonored the drawer upon proper proceedings will pay the amount of it to the holder.

4.   If the check is a gift the drawer's engagement that the bank will pay is without consideration, and while it is good in the hands of an innocent indorsee for value, it is not enforceable by the original payee.

5.   But if it is given for a consideration it is a contract, and if it is dishonored the payee has an action, to recover the amount of it, against the drawer or in the event of his death, against his executors or administrators.

6.   A promise in consideration of marriage is by reason of the Statute of Frauds unenforceable.    So also is a promise in consideration of an engagement of marriage.

7.   A promise to marry is not within the Statute of Frauds.    It is not promises of marriage but promises "made in consideration of marriage" that must be in writing.    The statute concerns itself not with the subject of the promise, but with the consideration for it.

8.　Promises of marriage are nearly always, though not necessarily mutual.　If mutual they are literally within the terms of the statute because the promise of each party is made in consideration of the reciprocal promise of the other party.　But centuries of judicial interpretation have established the principle so firmly that every lawyer and every layman knows that mutual promises of marriage do not have to be in writing in order to be binding.

9.　An oral money promise in consideration of a marriage promise is invalid. But a written money promise, like a check, made in consideration of an oral marriage promise is a perfectly good and enforceable contract.

10.　A promise to marry need not be express.　It may be implied.　Spoken words may be presumed from circumstances.　Moreover, any contract not required to be in writing may be complete without words.　A contract requires a meeting of minds not of words.　It demands mental not vocal accord.

11.　A check for seventy-five thousand dollars in consideration of a marriage promise is not rendered invalid by reason of the fact that the parties contemplated a still larger payment to be made which larger payment cannot be enforced because not evidenced by writing.

12.　The testator on the day of his death delivered to the plaintiff his check for seventy-five thousand dollars saying "if I live till Monday I will fix up the rest."　The bank refused payment owing to the testator's decease.　This suit was brought against his estate.　The evidence tended to show that three months before, the testator had promised to put five hundred thousand dollars in the plaintiff's name if she would marry him to which she assented.

*Held:*

That the jury would have been justified in finding that the check was given in consideration of the plaintiff's implied renewal or continuance of her promise to marry and therefore is valid and enforceable.

On exceptions.　This is an action of assumpsit brought by plaintiff against the executors of the will of Frederick W. Hill, late of Bangor, deceased.　The action was brought on a check drawn by Frederick W. Hill on April 10, 1920, for seventy-five thousand dollars, on the Eastern Trust and Banking Company, payable to plaintiff, and given to plaintiff by drawer on the day it was drawn.　The drawer deceased on the day the check was drawn and on presentment of the check to the drawee on April 12, 1920, acceptance and payment was refused. After the defendants were appointed executors of the will of the said Frederick W. Hill, demand of payment of the check was made upon them, but payment was refused.　The general issue was pleaded and also a brief statement alleging want of consideration.　At the conclusion of the evidence for plaintiff, on motion by counsel for defendants, the presiding Justice directed a verdict for defendants, and plaintiff excepted.　Exceptions sustained.

The case is fully stated in the opinion.

*Louis C. Stearns and Alfred A. Schaefer,* for plaintiff.

*Ryder & Simpson,* for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, WILSON, DEASY, JJ.

DEASY, J. The defendants are sued as executors of the will of Frederick W. Hill late of Bangor. Mr. Hill during his last years boarded at the Bangor House, but commonly spent his evenings at the home of the plaintiff, his second cousin. Both had been married, but some years before he had been left a widower and she a widow. In February, 1920, Mr. Hill became ill and was taken to the residence of the plaintiff where he remained until his death which occurred the following April. During his illness Mr. Hill gave and delivered to the plaintiff certain stock certificates of the approximate value of thirty-nine thousand dollars. On the day of his death Saturday, April 10th, 1920, he drew a check for seventy-five thousand dollars payable to the plaintiff and delivered it to her. On the following Monday the check was presented at the bank but, the drawer having deceased, payment was refused. Later, after due demand, the pending action was brought to recover the amount of the check.

ACTIONS ON CHECKS. WHEN MAINTAINABLE.

As between the drawer of a check and the drawee (bank) the check is an authorization to pay the amount of it out of the drawer's funds on deposit. If the drawer has not a sufficient deposit to meet the check, it authorizes payment and impliedly agrees to make reimbursement.

The authority may be revoked at any time before payment or acceptance. The revocation may be express. The drawer may "stop payment." The death of the drawer operates as a revocation and justifies the bank in withholding payment. *Gerry* v. *Howe,* 130 Mass., 350. *Burrows* v. *Burrows,* (Mass.), 134 N. E., 272.

But as between the drawer and payee the check contains an implied promise.

"Liability of Drawer. The drawer by drawing the instrument . . engages that on due presentment the instrument will be accepted or

paid, or both, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder." Negotiable Instruments Act— 1917, Chap. 257, Sec. 61.

If the check is a gift the drawer's engagement that the bank will pay is without consideration, and while it is good in the hands of an innocent indorsee for value, it is not enforceable by the original payee. "A man may not donate his own naked promise." *Whitehouse* v. *Whitehouse*, 90 Maine, 477. *Burrows* v. *Burrows*, supra. 28 Corpus Juris, 660, L. R. A., 1918, C. 340.

But if it is given for a consideration it is a contract, and if it is dishonored the payee has an action, to recover the amount of it, against the drawer or in the event of his death, against his executors or administrators. *Whitehouse* v. *Whitehouse*, supra.

It may be argued that a gift is good between the parties. True if there has been a delivery of the thing given. Otherwise not. And in theory of law the attempted gift of a check is not executed by delivery until the bank has paid, accepted or certified it.

## THE ISSUE.

The parties disagree as to whether the check was intended as a gift or was delivered for a consideration. If the former it cannot be enforced. If the latter it is a contract and enforceable. The defendant says that it was an intended gift. The plaintiff replies that it was delivered to her by Mr. Hill for a valuable consideration, to wit, her promise to marry him.

The defendant rejoining denies the fact of such promise, or that any such promise was a consideration for the check, and further that even if true such a promise is void and ineffectual by reason of the Statute of Frauds.

To quote from the brief of the learned counsel for the defendant, the defense is—

"(1) That no such agreement was made as alleged—and (2) that such agreement if made was oral and invalid by reason of the statute of frauds, being in consideration of marriage and that said check consequently lacked all consideration and was not enforceable by suit."

We shall first consider the question of law, to wit, whether the alleged agreement was "invalid by reason of the statute of frauds being in consideration of marriage."

In discussing this legal question we shall assume, of course without deciding, that the facts are in substance as claimed by the plaintiff.

### FACTS AS CLAIMED BY PLAINTIFF.

The witnesses relied upon in the main to prove the plaintiff's case were her son Henry and Agnes J. Sharpe, a nurse. Henry Guild testified that on January 26, 1920, at his mother's home, after considerable preliminary conversation, which it is unnecessary here to rehearse, Mr. Hill said to the plaintiff: " 'Now Ella I will agree to put five hundred thousand dollars in your name immediately if you will agree to be engaged to me', and she said she would. And then he said 'Now Ella remember that is a bargain and I have Henry as a witness' ."

Miss Sharpe's testimony is that on April 10th, Mr. Hill being then very ill called for his check book, wrote the check which is in suit, had Miss Sharpe witness it and calling the plaintiff he said to her, "Here I have written this check for you and if I live till Monday I will fix up the rest." Miss Sharpe goes on to say "and he handed Mrs. Guild the check in my presence."

The defendant denies that the facts are as claimed by the plaintiff and further says that if the facts and inferences are as the plaintiff contends she is barred from recovery by the Statute of Frauds.

### STATUTE OF FRAUDS.

The Statute of Frauds is in the briefs of counsel discussed ably and with copious citation of authorities. Almost every American State and English Colony has a statute of frauds substantially like the British Statute enacted in the reign of Charles the Second.

The Maine Statute of Frauds is Chap. 114 of the R. S. Sec. 1 provides that no action shall be maintained in certain specified cases "Unless the promise, contract or agreement, on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith, or by some person thereunto lawfully authorized; but the consideration thereof need not be expressed therein, and may be proved otherwise."

One of the cases specified wherein a writing is made necessary is "To charge any person upon an agreement made in consideration of marriage."

The statute provides that "no action shall be maintained" upon oral contracts in consideration of marriage. Another section of the statute says that no oral contracts (of a specified character) "shall be valid." In some states oral contracts in consideration of marriage are declared to be "void." "But the distinction is without any essential difference and is now so regarded by authors generally, and in most of the decided cases." *Bird* v. *Munroe*, 66 Maine, 343. In this opinion we refer to such oral contracts as invalid or void.

### AGREEMENT TO BE ENGAGED.

The plaintiff contends that while an agreement to pay money in consideration of a promise of marriage is invalid such an agreement in consideration of a promise to become engaged to marry is valid. This theory finds little support in authority and none, we think, in reason.

Followed to its logical conclusion an oral contract to convey land is invalid, but an oral contract to make a written contract to convey land is valid; an oral agreement to work for another for more than a year is bad, but an oral agreement to enter into a written engagement to work for more than a year is good. The theory will not stand the test of the reductio ad absurdum.

### MORAL OBLIGATION AS A CONSIDERATION.

The plaintiff cites authorities holding that while a promise in consideration of marriage is invalid such a promise creates a moral obligation supplying a sufficient consideration for a postnuptial contract conveyance or payment.

But counsel for the defendants cite numerous cases wherein courts in other jurisdictions have held the contrary.

It is unnecessary here to analyze or further to refer to these conflicting authorities because in the recent case of *Roderick* v. *Paine*, 121 Maine, 420 this court held that a transfer of an automobile by a husband to a wife pursuant to an oral antenuptial promise was a voluntary gift the promise affording no consideration for the transfer.

But neither *Roderick* v. *Paine*, nor the other cases cited by counsel and referred to in this paragraph are decisive or very closely in point. In all of said cases an attempt was made to enforce an oral promise. In the pending case the contract sought to be enforced is a check. In the cases cited no scrap of antenuptial writing appears. In the case at bar the only promise coming within the statute is Mr. Hill's money promise and that is in writing and signed.

## WHITEHOUSE CASE.

The plaintiff cites and relies upon the case of *Whitehouse* v. *Whitehouse*, supra. In that case, however, the check was given not in consideration of a promise of marriage, but in consideration of the postponement of a marriage that had been long before agreed upon. It was moreover, evidently not contended that the Statute of Frauds applied.

We think that the plaintiff's exceptions should be sustained, not on the ground that a promise in consideration of an engagement is valid, nor on the theory that an oral pre-nuptial promise provides a sufficient consideration for a postnuptial contract, nor yet upon the authority of the Whitehouse Case, but because a promise to marry is not in any case within the Statute of Frauds.

## PROMISE TO MARRY NOT WITHIN STATUTE.

A promise to marry is not within the Statute of Frauds. It is not promises of marriage but promises "made in consideration of marriage" that must be in writing. The statute concerns itself not with the subject of the promise, but with the consideration for it.

"A promise to marry is not a contract or agreement made in consideration of marriage within the meaning of the statute of frauds and hence it is not necessary that the contract should be in writing." 9 Corpus Juris, 327.

"A promise to marry is not a promise 'in consideration of marriage' so as to require it to be evidenced in writing under the statute of frauds." 4 R. C. L., 151.

Promises of marriage are nearly always, though not necessarily mutual. If mutual they are literally within the terms of the statute because the promise of each party is made in consideration of the reciprocal promise of the other party.

But centuries of judicial interpretation have established the principle so firmly that every lawyer and every layman knows that mutual promises of marriage do not have to be in writing in order to be binding.

The statute reaches "not mutual promises to marry, but only promises for other things made in consideration of marriage." *Derby* v. *Phelps*, 2 N. H., 516.

The reason has been variously stated: The learned counsel for the defendant in his brief suggests that it is because of public policy, a suggestion not wanting in judicial sanction.

The Illinois Court has said that it is because such promises are "continuing contracts by consent." *Blackburn* v. *Mann*, 85 Ill., 226.

The Kentucky Court puts it on the ground of probable legislative intent.

"It would be imputing to the legislature too great an absurdity to suppose that they had enacted that all our courtships to be valid must be in writing." *Withers* v. *Richardson*, (Ky.), 17 Am. Dec., 44. But whatever the reason may be it is settled that while mutual promises of marriage are embraced in the language of the statute they are not within its purview and meaning.

STATUS BEFORE CHECK GIVEN.

Before the check was given no promise is shown to have been made to which the law gives effect. The defendant's promise to pay money was invalid by reason of the statute. His promise to marry was likewise void because an inseparable part of an entire contract, a part of which was void.

"Where the promise to marry is only a part of an entire contract which includes promises in relation to property and settlements, the contract is indivisible and no action can be brought on any part of it unless it is in writing." 9 Corpus Juris, 328.

Upon examination it will be found that the above quotation is somewhat broader than is warranted by the cases cited to support it. Nevertheless, it is apparent that the alleged marriage and money promises made in January constituted an entire contract. Mrs. Guild's promise to marry was not within the statute, but was invalid for want of consideration for the reason thus stated by the Michigan Court:

"In order to make one promise a valid and binding consideration for another, it must itself be valid and binding." *Liddle* v. *Needham*, 39 Mich., 149; *Binion* v. *Browning*, 26 Mo., 271; *Hooker* v. *Knab*, 26 Wis., 513.

If the testator's money promise made in January had been in writing the Statute of Frauds would have been satisfied. The marriage promises required no writing.

On April 10th a money promise was put in writing. A check is not merely a written memorandum of a contract. It is a written contract. But the defendant says that it is unenforceable.

### EXISTING ENGAGEMENT AS PAST CONSIDERATION.

If it be said that when the check was delivered there was an engagement of marriage already existing, and that such past consideration will not support the contract, the answer is that a promise of marriage is not merely a past, but a continuing promise. *Blackburn* v. *Mann*, 85 Ill., 226; *Garmong* v. *Henderson*, 112 Maine, 385.

It has been held that "the fact that a promise to marry was made six years before the writing was drawn and signed does not impeach the consideration of the contract." *McNutt* v. *McNutt*, (Ind.), 19 N. E., 115.

"Even though the original engagement was absolute and not coupled with an express or implied understanding as to the marriage settlement, the parties by the subsequent written contract are taken, as a matter of law, to have entered into new promises including the engagement of marriage." *Re Appleby*, (Minn.), 111 N. W., 311. 13 R. C. L., 1016.

Thus it is held that notwithstanding an existing valid engagement, an engagement that would be recognized as valid in a breach of promise suit, a promise of marriage may be an efficient consideration for a money promise.

The theory of these cases undoubtedly is that under such circumstances the existing engagement is to be treated as broken by mutual understanding and new promises substituted.

But we have seen that up to the time the check was given while the parties may have regarded themselves engaged, no engagement existed recognized by law as a valid contract. The marriage promises were so yoked to an oral and therefore invalid money promise as to be themselves without legal effect.

### Promise of April 10th.

The vital question to be determined is what if any promise is to be implied from the delivery and receipt of the check, taking into consideration all that had gone before.   To repeat, the promises made in January had no legal standing.   The money promise was invalid, because not in writing.   The marriage promises were invalid because inseparably linked with the money promise.   The occurrence of January is important, but only as it gives significance and color to what took place on April 10th.

Was the check proffered and received on April 10th as a gift prompted by relationship, friendship or love? or did the parties mutually intend to renew the promise which made before had been ineffective for want of a consideration?

### Check as a Separable Transaction.

The defendant urges that the promise contained in the check is only a part of the transaction as shown by the plaintiff's testimony; that there was as claimed by the plaintiff an oral promise to pay a large sum, in all five hundred thousand dollars; that the check was a part of an entire contract and that a part having failed for want of writing the whole is invalid.   In *Loomis* v. *Newhall*, 15 Pick., 159, relying upon and citing earlier authorities it is said in substance that an agreement which is void in part by the Statute of Frauds is void in toto.   The later case of *Rand* v. *Mather* overrules *Loomis* v. *Newhall.*

In *Rand* v. *Mather*, Judge Metcalf says:   "The true doctrine is this:   If any part of an agreement is valid it will avail pro tanto, though another part of it may be prohibited by statute; provided the statute does not either expressly or by necessary implication, render the whole void; and provided furthermore that the sound part can be separated from the unsound and be enforced without injustice to the defendant."   *Rand* v. *Mather*, 11 Cush., 7.

"If a distinct engagement as to any part or item cannot be fairly and reasonably extracted from the transaction no recovery can be had upon such part or item."   Browne on Statute of Frauds, Section 140.

Applying these principles to the facts in the pending case the promise contained in the check does not depend upon the oral promise;

no statute renders the whole void; the check may be enforced separately without doing injustice to the defendants or the testator.

If the absolute promise which the statute reads into a check and a conditional oral promise of a further sum to be later paid were both made in consideration of the plaintiff's promise to marry, a distinct engagement that the check should be paid may fairly and reasonably, and must almost inevitably be "extracted from the transaction."

Where as in this case there is a distinct engagement, which is the subject of the suit, the writing need only relate to such engagement. So far as relates to the seventy-five thousand dollar claim, whether or not there was a consideration is a disputed question of fact. But the check is a sufficient writing. It contains all the terms of the separable contract, except such as are read into it by the statute itself, and except the consideration which need not be in writing.

CONCLUSION.

A promise to marry need not be express. It may be implied. Spoken words may be presumed from circumstances. Moreover, any contract not required to be in writing may be complete without words. A contract requires a meeting of minds not of words. It demands mental not vocal accord.

From the evidence the jury might have found,—that an agreement was made in January as testified to by Henry Guild. If not, there would have been no sufficient basis for finding an implied promise in April;— that in the delivery of the check on April 10th the testator intended to so deliver it in consideration of the renewal or continuance of the plaintiff's promise to marry him;—that in receiving the check the plaintiff understood Mr. Hill's intention, participated in it and so received the check in consideration of the continuance or renewal of her promise.

If the case had been submitted to a jury and the jury had so found, the verdict would not have been so manifestly wrong as to require reversal.

*Exceptions sustained.*