SHANNON, Executrix, Respondent, vs. HOFFMAN, Appellant.

*March 7—April 5, 1950.*

594

For the appellant there was a brief by *Walter D. Corrigan, Sr.,* and *Thomas M. Corrigan,* both of Milwaukee, and oral argument by *Walter D. Corrigan, Sr.*

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *James P. Brody,* all of Milwaukee.

FAIRCHILD, J.   The possession by the payee of a promissory note in the condition in which it was originally delivered and free from any evidence therein of cancellation carries with it presumptions in favor of the payee as owner. As a matter of evidence it constitutes a *prima facie* case that the note is unpaid.

Appellant concedes the correctness of the foregoing rule. She does, however, seek to overcome the effect of that *prima facie* case by allegations that in April, 1944, "for good, valuable, and sufficient considerations, the said Johanna L. Pennifill [deceased], while the owner of the promissory note . . . made an intentional cancellation thereof, and discharged both of the defendants from any obligation on account thereof. . . ." The jury found this claim was not supported by the evidence. There is no evidence of an actual cancellation of the instrument, intentionally made.

As appears in the statement of facts, the jury determined that in the conversation relied upon by the appellant, Johanna L. Pennifill (the payee) did not "make a statement to the defendants, or either of them, by which she intended to cancel the debt as of that time." This finding of fact must stand,—as there is evidence excluding any basis for holding that a cancellation occurred or was then intended. The evidence accepted by the jury as controlling is sufficient to warrant their conclusion. There are different inferences to be drawn from that April, 1944, conversation. In different portions of the testimony given by appellant the effect appears to vary. Some of the answers would bear an interpretation that in the future Mrs. Pennifill would cancel the note, if and when, in case of accident or disease, she came to live with the Hoffmans. In one portion of the testimony it appears that Gladys Mae Hoffman testified: "No; she said, 'I will cancel the note;' 'I will cancel the note—.'" There was an interruption, and later the witness continued: "She said, 'I will cancel the debt and destroy the note.' Those were her words." Question: "In other words, your grandmother did not say, 'I cancel the note;' she said, 'I will cancel the note?'" Answer: "She said, 'I will cancel the note; I will cancel the debt. I will cancel the debt and destroy the note.'" It appeared that Mrs. Pennifill was at the Hoffman house for a short time before and after that conversation. And then again Mrs. Hoffman, one of the defendants, testified

that her mother said, " 'I will cancel all the indebtedness and destroy the note; and I don't want Marguerite to be without a home; I want her to be happy.' " At another point in the testimony she said that her mother did say, " 'I cancel the note.' " At another point she testified that her mother said, " 'I destroy—I. cancel all your debts, and I will destroy the note.' That is what she said." It also appears that on adverse examination the following question with relation to this same conversation was put: "Who was present at that conversation?" Answer: "Mr. Hoffman, my mother, and possibly Gladys Mae, my daughter. My mother said, 'Hoffey, I don't want you to sell the home. I would rather cancel the note.' She said she would cancel the indebtedness and destroy the note." There is the further question: "Did she say that she would cancel the note in the future?" Answer: "She said I was not to worry. She would destroy the note." The witness also testified that her mother also mentioned that if she (the mother) ever had anything happen to her such as a broken hip, she would like to come to live with them. They promised her at that time she could do so. She was living with them at that time.

A will was made by the payee of the note on April 17, 1945, in San Diego, California. There is testimony by the appellant that a conversation with reference to the note occurred there with the deceased. It is established· that this conversation took place a few days after the execution of the will. The testimony in that regard in favor of the appellant's contention is that the deceased spoke to Gladys Mae about the note and said, "I am so glad that I canceled that note." Then this question was asked: "Did she mention the note at that time?" Answer: "She didn't say anything to me, but she said to Gladys that she didn't have to worry because she wanted us to be well taken care of."

In opposition to that is the testimony given by Mrs. Shannon which is directly in conflict with all of the appellant's claims. Mrs. Shannon testified that she was present

at the conversation referred to, that it occurred as Mrs. Hoffman and her daughter, Gladys Mae, were leaving for the station. She testified that the deceased said to Mrs. Hoffman: " 'You are sure I will get my money on the note,' " and Mrs. Hoffman replied, " 'Now, don't worry about the note; you will get your money.' " And then in the presence of all, Gladys Mae said, " 'Granny, don't worry about that note; Daddy will pay it; he has life insurance.' "

A part of the note on which this action was brought reads: "This note is given and accepted as full payment for all prior notes and indebtedness." In judging the testimony, it appears that help had been extended by the deceased to the appellant's family. While this is not controlling, it may have some significant bearing on the confusion which exists in the minds of some of the witnesses. The evidence, as we have stated, is sufficient to sustain the verdict.

Appellant, however, seems to feel that respondent gained some undue advantage by being permitted to introduce in evidence the last will and testament of the payee of the note, which was executed after the April conversation in 1944 and shortly before the conversation occurring in San Diego. Under the circumstances, it was proper to admit the will. The suggestion that it amounted to a self-serving declaration is overcome when considered in the light of all the circumstances made to appear. It shows the thought of the payee and discloses her claim of ownership and consequently that there was no intention on her part to part with the note. It is the intention shown by her acts which is important. Those facts are to be considered with their antecedents and consequences. It is this question of intention upon which the court is to pass judgment. The will and the paragraph to which objection is made are not a "narration" or a "recital" of any claimed fact or facts. As urged by the respondent, the writing of the will is not a direct reference to the origin of title, nor is it a direct reference to the continuing title. As already said, the statements in the will have no narrative value. Their

truth is unimportant. The making of the will is the important fact. It is nothing more than evidence of an act consistent with the ownership and the producing of the uncanceled note. The only living witnesses to the conversation of April, 1944, are the appellant and her daughter. The other maker of the note, Professor Hoffman, died after the action was begun, and Mrs. Pennifill is now dead. The testimony of the living witnesses will not necessarily be controlling if there is competent evidence to the contrary. The deceased retained the note. She did not destroy it. She exercised a control over the note and acted consistently with a complete ownership, retaining the evidence which indicated she had neither canceled nor intended to commit herself by any other act which would discharge the contract for payment to her of money. The will is a "verbal act," to be sure, but is evidence related to the question of ownership. The payee continued at all times to exercise control over the note. The evidence objected to is not a narration or self-serving statement, extending itself as such into any factual limits fixed by the claim of some contract based upon some consideration, such as a promise for a promise or love and affection.

A situation did not exist which required the exclusion of the will. The right to the evidence falls within an exception to the hearsay rule. As said in 3 Wigmore, Evidence (2d ed.), p. 769, sec. 1765: "The only inquiry need be whether such assertions are covered by some exception to that rule, or whether utterances amenable to it are evidential in any indirect way apart from their assertive value." This statement of the rule is in accord with the doctrine followed in Wisconsin beginning with *Roebke v. Andrews,* 26 Wis. 311. In the case of *Academy of Music Co. v. Davidson,* 85 Wis. 129, 55 N. W. 172, the doctrine was adhered to. Mr. Justice LYONS said at page 137: "In ruling upon an objection to this class of testimony, the learned circuit judge stated that he admitted it, 'not for the purpose of proving the facts stated

in Vollert's [deceased] letter, or as competent to prove such facts, but for the purpose of showing the claim made by Vollert. . . .' We think it was competent to prove in this manner the claim of Vollert as to the reasons why he left the building and threw up his lease." In *Knox v. Roehl,* 153 Wis. 239, 140 N. W. 1121, it was ruled that "when a question of intent is to be determined, subsequent acts and declarations are relevant because they throw light upon the prior acts and declarations, especially where they have been consistently the same." (Headnote No. 2.) In the case at bar permitting the note in question and the will in evidence, there is nothing more involved than an act showing a state of mind and intent. 1 Jones, Evidence (2d ed.), p. 439, sec. 351. See *Kidder v. Kidder,* 222 Wis. 183, 268 N. W. 221, and cases there cited. *Hartzog's Estate,* 270 Pa. 172, 113 Atl. 193.

Thus, evidence of a subsequent act helps the triers of fact to discover the intent and the state of mind of the deceased. The ruling as to evidence of this character depends upon an exact understanding of the purpose; that is, whenever the intention is of itself a distinct and material fact in a chain of circumstances, it may be proved in the manner here sought to be availed of. There is also the circumstance that the time of the execution of the will in which the deceased exercised ownership over the note and disposed of it in a way agreeable to her was shortly before the San Diego conversation which was brought into the case by the appellant. This made the will and its execution pertinent and material evidence. It throws light upon the conversation so far as it may on what the intent of the deceased was.

It is urged that the admission made by counsel for the appellant at the opening of the trial made the production of the will unnecessary. The counsel did admit the execution and delivery of the note, but did not go any further than to admit that the paper is still in existence, insisting, however,

always on an affirmative defense, upon which appellant had the burden of proof. The purpose of the admission is apparent. It was admittedly made in the hope of eliminating all reason for receiving the will in evidence. Whether the evidence was warranted because of an exception to the hearsay rule or, as may be said, because it is a "verbal act" and is a part of the conduct of the person whose intention is under consideration, it comes in for whatever light it may throw upon the conduct of which it is a part. The act of the person becomes independently material.

We are therefore of the opinion that the respondent was entitled to have the instrument received in evidence. The appellant was not by reason of the limited offer made at the beginning of the trial entitled to an "effective barricade" against such evidence. The presence of the note uncanceled is evidence. The fact of control and the extent to which that control was exercised is material. The evidence was offered for a proper purpose.

The conversation in April, 1944, was found by the jury to be lacking in the essentials of a contract. The prospect of an accident or illness sometime in the distance must be regarded under the competent evidence and the findings of the jury to have been a matter for future arrangement. The evidence given by Mrs. Shannon of the conversation between Mrs. Hoffman and the deceased in California at the time of the visit of Mrs. Hoffman shows no intention on the part of the deceased to cancel the note, destroy it, or give it away.

The burden of establishing the intention on the part of the deceased to give up or bargain away the obligations of appellant was upon the appellant. There was no conveyance in this case, no passing of property to appellant. The most that can be said is that there was an interest manifested by the mother in her daughter, but nothing in the nature of a completed contract was established by the evidence. There certainly was no completed gift so far as this last and final note is concerned. And there was no performance of any

act furnishing a ground for discharging the appellant from her obligation to pay the note. As pointed out earlier in the opinion, the testimony fully warranted a conclusion reached by the triers of the fact.

A question of this character, where there has been no delivery of an instrument, no cancellation thereof, cannot fairly or safely be left to waiver over a possibility of or in speculation as to what might happen upon the occurrence of some future event, nor can it be ruled, where the evidence fails, as it does here, that there had been an exchange of promises. Again, the note was not canceled nor was it delivered out of the possession of the payee. The evidence clears the case from any rightful claim in appellant's favor of the existence of a consideration on which to base a contract or gift in the light of any contention urged by the appellant.

It is considered, and we hold that no prejudicial error either in the rulings on evidence or instructions to the jury exist which require disturbing the judgment entered at the circuit.

*By the Court.*—Judgment affirmed.