Earl PRYOR, Administrator of the Estate of
Charles M. Hogeland, Deceased,
Appellant,

v.

Marion P. BOND, Appellee.

No. 1577.

Municipal Court of Appeals for the
District of Columbia.

Argued Nov. 22, 1954.

Decided Jan. 5, 1955.

Vivian O. Hill, Washington, D. C., for appellant.

John Alexander, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

The administrator of the estate of Charles M. Hogeland sued Marion P. Bond, claiming that she had become indebted to Mr. Hogeland during his lifetime on a note, and also on a series of separate loans. Mrs. Bond defended on the ground that the note had been discharged in consideration of her promise to marry Mr. Hogeland and that the other items were gifts and not loans. The trial court sustained defendant's position and the administrator has brought this appeal.

Mr. Hogeland, a widower, was a regular visitor at Mrs. Bond's apartment. In December 1952 he lent her $1,200 for which she insisted on giving him a promissory note. The note bore no maturity date and the printed provisions for interest and place of payment were stricken out. In April 1953 they became engaged to marry and she testified that at that time when she "promised to become his wife," "he told me that

the note was cancelled as of now, also any future indebtedness of mine would be his." This testimony was uncontradicted, and it was corroborated in a general way by two daughters of Mrs. Bond and also by a friend of the family. The testimony also was that Mr. Hogeland himself found it necessary to postpone the marriage because of business commitments and that he died in October of the same year.

The question is whether the testimony supports the finding that the note had been discharged. Our Code provides that one of the ways in which a negotiable instrument may be discharged is, "[b]y any other act which will discharge a simple contract for the payment of money." Code 1951, § 28–801; Uniform Negotiable Instruments Act, § 119. We have held that a written contract may be modified, rescinded or discharged by subsequent oral agreement. Nickel v. Scott, D.C.Mun.App., 59 A.2d 206. Citing many cases, Williston has said that it is competent for the parties to a written contract to "waive, dissolve or annul," it orally. Williston on Contracts, Rev.Ed., Vol. 2, § 591. And there is no logical reason why this principle should not apply to the verbal discharge of a negotiable instrument. It has been held, and we think correctly, that when a valuable consideration exists for the discharge of a note, such discharge need not be in writing, since it may be accomplished by any act which will discharge "a simple contract for the payment of money." English v. Evans, Mo.App., 157 S.W.2d 793, 795. It seems clear that such a discharge was intended and accomplished by the parties in this case. The effect of what Mr. Hogeland told Mrs. Bond was that in consideration of her promise to marry him and the benefits he expected to derive therefrom, he was discharging the debt evidenced by the note. There can be no doubt that such was a good and valuable consideration. Many years ago the Supreme Court ruled that marriage is not only a valuable consideration to support a contract, "but is a consideration of the highest value, and from motives of the soundest policy is upheld with a steady resolution." Prewit v. Wilson, 103 U.S. 22, 26 L.Ed. 360. In the eyes of the law there is no higher consideration to support a contract than a promise of marriage. See Miles v. Monroe, 96 Ark. 531, 132 S.W. 643; Guild v. Eastern Trust & Banking Co., 122 Me. 514, 121 A. 13; De Hierapolis v. Reilly, 44 App.Div. 22, 60 N.Y.S. 417; Anderson v. Goins, Tex.Civ.App., 187 S.W. 2d 415. See also, 17 C.J.S., Contracts, § 85; Williston on Contracts, Rev.Ed., Vol. 1, § 110; id. Vol. 2, § 591; Corbin on Contracts, Vol. 1, § 134; id. Vol. 2, § 460.

Appellant urges that the note was not discharged because it was not delivered up to the maker but remained in Mr. Hogeland's possession. But we think such fact would do no more than raise a presumption that the note was unpaid. See Clyne v. Brock, 82 Cal.App.2d 958, 188 P.2d 263; Shannon v. Hoffman, 256 Wis. 593, 42 N.W.2d 268. That presumption would have been overcome by the evidence of payment, and we think it was just as effectively overcome by the uncontradicted evidence of cancellation and discharge. We have had no difficulty whatever in concluding that the ruling on this point was supported by ample evidence and was legally correct.

We think there is even less basis for challenging the ruling that the other items in the administrator's claim were gifts to Mrs. Bond. It is true that these items, some twelve in number, ranging from $5.00 to $200.00 and totaling $1,577.-00, were listed as "loans" by Mr. Hogeland on the back of the note we have discussed. (The testimony was that he kept no formal business records and entered his financial transactions on memos or slips of paper.) But the uncontradicted evidence was that these various amounts were in fact not loans but had been presented to defendant for personal purchases; for example, for a television set, for a vacation trip, for binoculars, for eyeglasses, toward the cost of her trousseau, and as outright personal gifts. It was clearly within the province of the trial judge to accept that testimony as having a higher probative value than the decedent's informal notations.

Finally appellant asks us to rule that the trial judge should have stricken the testimony of the three witnesses produced by defendant. He relies on our surviving party statute, Code 1951, § 14–302. That section has no application here; it prohibits a judgment on uncorroborated testimony in actions *against* an administrator or other representative of a decedent or incompetent, and has no reference to suits commenced by an administrator. Even if it had any applicability to this action, we think it very plain that the testimony of the three witnesses would meet the statutory requirement. Mrs. Bond testified that at the time she made her promise of marriage Mr. Hogeland cancelled her financial obligations to him. One of her daughters said that he volunteered that when they married all her bills would be his and "it would be naturally ridiculous for her to owe him money when they were married." Another daughter described some of the items as gifts. The third witness said that when in a discussion about the price of an engagement ring Mrs. Bond mentioned the money she had borrowed from Mr. Hogeland, he said: "Just forget about that, because what is yours is mine and what is mine is yours. * * * We are going to get married. We will just consider that null and void." We can easily understand that such testimony would impress the trier of the facts as highly plausible and persuasive corroboration.

Affirmed.

HOOD, Associate Judge (concurring).

I have no difficulty in agreeing with the majority that the trial court was fully justified in finding that the various amounts not included in the promissory note were outright gifts and were never intended to be loans. I differ with the majority in the treatment of the amounts represented by the note. I think it is clear that both parties originally considered this to be a loan, and I do not believe the evidence justifies the conclusion of the majority that the loan was discharged in consideration of a promise to marry. As I read the record, the promise to marry was not given in exchange for discharge of the loan, but instead, after the promise to marry was given it was the occasion or motive for Mr. Hogeland to make a gift to his fiancée of the indebtedness she owed him. The trial court found "that it was the intention of the decedent to make a gift of this amount to her or to cancel her obligation to pay it." The evidence supported this finding and in my view the only problem is whether a creditor may make a gift of the debt to the debtor without surrendering or cancelling the evidence of the debt which in this case was a promissory note.

There is a conflict of authorities on this question, but I think this case is controlled by the law of Maryland because the parties lived there, the loan was made there, the note was executed there, and the intended gift was made there. In an early Maryland case, Linthicum v. Linthicum, 1849, 2 Md. Ch. 21, it was held that where the transaction is exclusively between the creditor and the debtor, and the evidence indicates clearly the intention of the creditor that the debt should be forgiven and released to the debtor himself, delivery or cancellation of the evidence of the debt was not essential to complete the gift. There the court, after the death of the creditor, ordered his executor to deliver up and cancel the sealed note representing the debt. The later case of Howard v. Hobbs, 1915, 125 Md. 636, 94 A. 318, indicates that the rule announced in the Linthicum case is still the law of Maryland. Accordingly, I concur in the result reached by the majority, but place my concurrence on the ground that under the law of Maryland there was a valid gift by Mr. Hogeland to Mrs. Bond of the indebtedness she owed him.