Edna L. PRATHER, Appellant,

v.

Janie B. HILL, Appellee.

No. 4318.

District of Columbia Court of Appeals.

Argued Oct. 21, 1968.

Decided Feb. 28, 1969.

Russell Hardy, Sr., Washington, D. C., for appellant.

Robert J. Stanford, Washington, D. C., with whom William F. Reed, Washington, D. C., was on the brief, for appellee.

Before MYERS, FICKLING and KERN, Associate Judges.

KERN, Associate Judge:

Appellant Prather, the daughter of decedent Gibbs T. Liverman and the administratrix of his estate, sued appellee Hill to recover (1) the balance of a bank account in the joint names of Liverman and Hill and (2) a 1963 Cadillac purchased by Liverman with funds from that account and registered in his name and that of Hill. After trial by jury, appellee was awarded both the bank account in the amount of $5,838.57 and the automobile. This appeal claims that the court below erred in refusing to determine as a matter of law that appellee had no survivorship interest in either the bank account or the car. We affirm.

Resolving factual questions in appellee's favor, as we must by virtue of the jury's verdict,[1] the history of the joint account begins in 1948 or 1949, when Liverman rented for $50 per month an apartment in the basement of the home of appellee who was a widow. Since Liverman was a merchant marine seaman and therefore absent frequently and for prolonged periods of time, he suggested that he pay appellee his rent by depositing money in her checking account in sufficient amounts to take care of the time he would be gone. Appellee explained to Liverman, who had no checking account and carried large sums of cash on his person, the workings of a joint bank account and suggested that they open such an account rather than have him deposit funds in her personal account, so that he would have a bank account also. Liverman agreed to this and, thereafter, he and appellee executed for the bank a signature card which provided in pertinent part:

> We, the undersigned, hereby agree to, and do give each to the other, a joint ownership with full right of survivorship in all monies now on deposit or at any time hereafter deposited by us, or by

either of us, or for us, together with all accumulations, in said account with the National Bank of Washington, D. C.

In the ensuing years, Liverman never paid his rent directly to appellee but merely deposited money in the amount of rent due and owing into the joint account. He often withdrew funds from that account for his own purposes and, on rare occasions, she did too, although also maintaining a checking account of her own. He urged her to use the joint account more often, but she regarded it as a "savings" account to which she had unlimited access but to which she would come for funds only upon extraordinary occasions. Liverman paid for the 1963 Cadillac from the joint account. The car was registered in both their names, but appellee maintained and used it almost exclusively.

A relationship which had commenced as one of landlady and tenant grew into a close personal friendship. Liverman named appellee his beneficiary for social security and death benefits and upon his death in 1963 appellee made all the funeral arrangements and buried him in her own family plot. Liverman had been divorced in 1933 and afterwards rarely saw appellant, the only child of his marriage. He publicly referred to appellee as his wife and they took trips together from time to time. He stated to appellee and others that the joint account and the car were hers. When Liverman was unable to go to sea because of an injury suffered, he continued to live in her home although he had no earnings with which to pay rent. During Liverman's final illness, appellee cared for him on a full-time basis. She deferred moving from her home because it was across the street from the doctor who was treating Liverman.

Appellant contends that this case comes within the rule established by Murray v. Gadsden, 91 U.S.App.D.C. 38, 197 F.2d 194,

---

1. D.C.Code 1967, § 17–305(a) " * * * when the issues of fact were tried by jury, the court shall review the case only as to matters of law * * *." See Safeway Trails, Inc. v. Schmidt, D.C. App., 225 A.2d 317 (1967).

33 A.L.R.2d 554 (1952), and reaffirmed by Imirie v. Imirie, 100 U.S.App.D.C. 371, 246 F.2d 652 (1957), and Thompson v. Thompson, 100 U.S.App.D.C. 285, 244 F.2d 374 (1957). In each of these cases the decedent deposited *his own* funds in a joint account and signed a statement supplied by the bank that the balance of the account would belong to the survivor. The court in each case concluded that a joint tenancy was not established because there was a lack of evidence that the depositor intended to transfer to the survivor a present interest and the right of survivorship in the bank account.

In *Murray,* the administrator's uncontradicted allegations were that decedent had established the account "merely for her own convenience, and without intending to make Mrs. Gadsden [the co-owner on the bank's records] the present owner of the savings account or of any interest therein". 91 U.S.App.D.C. at 46, 197 F.2d at 202. Decedent "retained the passbooks, made all subsequent deposits and withdrawals, reported the dividends as her own taxable income, and throughout her life continued to regard the accounts as her sole property." The court paraphrased these allegations as amounting to the statement "if the language of the printed forms [executed for the bank] transferred a present interest, Mrs. Murray [decedent] signed them through mistake".

In *Thompson,* the deceased during her last illness changed her account to a joint account with her brother "to make the money available for use for the benefit of the deceased while she was in the hospital and might be unable to sign checks or otherwise exercise dominion over the account". 100 U.S.App.D.C. at 286, 244 F.2d at 375. It was found that she did not intend to make a gift of the money to her brother.

In *Imirie,* the court acknowledged that there was evidence that decedent husband had intended that the surviving wife have a present right to use the funds in the joint accounts he had established but the court held that there was no evidence of his intent that she have the balance by right of survivorship. The court gave considerable weight to the fact that the accounts were business accounts of the husband. The court pointed out that a businessman could avoid his creditors by the device of holding his assets jointly with his wife and that a provision for survivorship of a bank account should be carefully scrutinized to be certain that it is not contrary to public policy.

■ In the instant case, there was evidence from which a jury could find that Liverman intended to create for appellee a present interest in the joint account as well as a right of survivorship. He was heard by others to say that the money in the account belonged to her. He encouraged her to make use of the account. His personal relationship with her was such that it was quite natural for him to make gifts to her. She had access to and made use of the joint account. The account itself was established many years before his final illness and death. There was no evidence that the creation of the joint account was contrary to public policy which was the concern expressed by the court in *Imirie.*[2]

There is another significant factual difference between the *Murray, Thompson,* and *Imirie* cases and the instant case. In those three cases the deceased had contributed *all* the funds when the joint account was established. Here, the initial deposit by Liverman contained money which he

2. The fact that Liverman had unlimited access to the account, *also,* is of no consequence. The court in Imirie v. Imirie said (100 U.S.App.D.C. 372, n. 2, 246 F. 2d 653): "[W]e do not read those cases [Gadsden and Thompson] as holding that any right of survivorship in a joint account is automatically defeated if the donating party retains a power to withdraw during his lifetime". *See,* 4 A. Corbin, Contracts, § 914 at 665 (1951).

owed appellee for rent and was appellee's money in fact and law. Subsequent deposits also often contained money which was due and owing her for rent. Consequently, the funds in this account were deposited by both signatories and so represented, in part at least, appellee's capital. Therefore, no reason is apparent why the right of survivorship provided for by the written statement filed with the bank should not be operative.

As to the automobile, appellant cites D.C. Code 1967, § 45-816[3] and urges that the parties to this appeal held the car as tenants in common. The evidence was that joint tenancy funds were used to buy the car. It was held in the same joint names as the bank account. We conclude that the parties intended to hold the purchased asset as joint tenants[4] and the presumption of tenancy in common under § 45-816 was rebutted by the facts in this case.

■ In any event, appellee used the car almost all of the time after they bought it. She maintained, insured and licensed it. Liverman referred to it as "Janie's car". Under these circumstances we conclude that the jury could properly find that Liverman gave his interest to appellee prior to his death.

■ Appellant urges that the trial court erred in permitting appellee to testify to declarations and admissions Liverman made before his death because such testimony is uncorroborated and violates D.C.Code 1967, § 14-302.[5] This argument fails for two reasons.

Section 14-302(a) is by its terms applicable only to a plaintiff, not to a defendant as appellee is here. The statute can be used only as a shield, not a sword. Were Mrs. Hill seeking to obtain assets within Liverman's estate rather than keep out assets not now in the administratrix's control, the statute would apply. But that is not this case. *Pryor v. Bond,* D.C.Mun.App., 110 A.2d 539, 541 (1955).

■ Secondly, there was corroboration of appellee's testimony concerning statements by decedent Liverman. Witnesses, not disqualified by Section 14-302, testified that in their presence Liverman spoke of the car as "Janie's car" and of the joint bank account in a manner indicating he considered it hers. Consequently, we are unable to hold that Section 14-302(a) precludes a verdict for appellee in this case, even were it applicable by its terms. *Pryor v. Bond, supra.* The judgment is

Affirmed.

---

3. Section 45-816 states:
Every estate granted or devised to two or more persons in their own right, including estates granted or devised to husband and wife, shall be a tenancy in common, unless expressly declared to be a joint tenancy but every estate vested in executors or trustees, as such, shall be a joint tenancy, unless otherwise expressed.

4. *See* Re Harris' Estate, 9 Cal.2d 649, 654, 72 P.2d 873, 876 (1937); Fish v. Security-First National Bank, 31 Cal. 2d 378, 387, 189 P.2d 10, 15 (1948); Goldberg v. Goldberg, 217 Cal.App.2d 623, 628, 32 Cal.Rptr. 93, 96 (Dist.Ct. App.1963), and annotation, 64 A.L.R.2d 953, § 24.

5. Section 14-302(a) states:
§ 14-302. Testimony against deceased or incapable person
(a) In a civil action against:
(1) a person who, from any cause, is legally incapable of testifying, or
(2) the committee, trustee, executor, administrator, heir, legatee, devisee, assignee, or other representative of a deceased person or of a person so incapable of testifying,
a judgment or decree may not be rendered in favor of the *plaintiff* founded on the uncorroborated testimony of the *plaintiff or of the agent, servant, or employee of the plaintiff* as to any transaction with, or action, declaration or admission of, the deceased or incapable person. (Emphasis added).