[Sac. Nos. 875, 876, 877.    Department One.—May 20, 1902.]

## CLARA A. HARRIS, Appellant, *v.* TIMOTHY R. HARRIS et al., Respondents.

RESULTING TRUST—FINDINGS AGAINST PLAINTIFF—CONVEYANCE BY PLAINTIFF—APPEAL.—In an action to enforce a resulting trust in mining property, where the findings are against the plaintiff, except as to one-third interest in a certain mine, which it is found was conveyed by the plaintiff to defendant's predecessor, and there is sufficient evidence to support the findings, they cannot be disturbed upon appeal.

ID.—PROOF REQUIRED.—One who would claim the ownership of property, of which the legal title stands in another, or that the same is held by such person in trust for the claimant, must establish the claim by clear, satisfactory, and convincing evidence.

ID.—PROVINCE OF TRIAL COURT.—Whether the evidence in any particular case is sufficient to establish a trust must be determined by the trial court; and its determination thereon will be accepted by this court as conclusive.

ID.—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT—ATTORNEY FOR BOTH PARTIES.—An attorney-at-law who at the time of a transaction in question was acting as the attorney for both parties is not within the rule prohibiting an attorney from testifying as to communications from his client, and he may properly testify respecting such transaction.

APPEALS from a judgment of the Superior Court of Tuolumne County and from orders denying a motion to vacate the judgment and to enter a contrary judgment and denying a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

J. B. Curtin, and H. V. Morehouse, for Appellant.

A. M. Drew, F. H. Short, and F. P. Otis, for John L. Harris, and Mary A. Stein, Respondents; J. F. Rooney, and F. W. Street, for all other Respondents.

HARRISON, J.—The plaintiff was married to one W. N. Harris at Stockton, in this state, in October, 1873, and thereafter lived with him as his wife until March 26, 1892. At that date an agreement, called a separation agreement, was entered into between them, under which they lived apart for about two years, and then resumed their former relation, and continued to live together until the death of Harris, in October, 1898. Harris had been married in Georgia, in July, 1848, and when he came to California, in 1850, he left his wife in Georgia, where she continued to live until her death, in 1892, and also a son, John L. Harris, one of the defendants herein, the issue of that marriage, who was born in September, 1849. The plaintiff was, however, ignorant of the fact that Harris had a wife, and did not know of the existence of his son or of the fact of his previous marriage until after his death. At the time of her marriage to him she was the owner of the Gem Mine, and also of a one-third interest in the Mazeppa Mine—two mining claims situated in Tuolumne County. For several years after their marriage Harris prospected and worked the Gem Mine, and during that time took a large amount of gold therefrom. Nothing appears to have been done upon the Mazeppa Mine other than assessment work prior to December, 1879. At that time Harris purchased from Dixon and Rodgers, two of the original locators of the mine, a two-thirds interest in the mine, and received a conveyance therefor from them. In March, 1880, with the consent of the plaintiff, he relocated the mine in his own name, and on May 31, 1882, upon his application therefor, a patent for the mine was issued to him by the

United States. In July, 1877, Harris purchased a mining claim of Hix and Onby, which he located in 1885 in his own name as the Junietta Mine. By the aforesaid separation agreement Harris conveyed to the plaintiff all of his interest in the Gem Mine and in certain other property, and the plaintiff conveyed to Harris all her claim or right ''to any and all other property owned or claimed by him, or any other property that he might thereafter acquire or have at the time of his decease.'' During the year prior to his death Harris made contracts for the sale of the Mazeppa and the Junietta mines, to be paid for in installments. A portion of the purchase price under these contracts was paid to him in his lifetime, and the remainder to his executor after his death.

The plaintiff brought this action against his heirs and legatees and the executor of his will, to have it adjudged and declared that she was the owner of the Mazeppa and Junietta mines, and that Harris held the legal title thereto in trust for her, and that the executor pay over to her the money received by him by virtue of the contracts of Harris for their sale. In the first count of the complaint the plaintiff alleges her ownership of an undivided third of the Mazeppa Mine, and an agreement by Harris, who held the legal title to the other two thirds, that upon receiving the patent therefor in his own name he would hold in trust for her one undivided third of said mine, and that upon any sale thereof would pay to her one third of the purchase price received therefor. In the second count of her complaint she alleges that she was the owner of an undivided third of the Mazeppa Mine at the time of her marriage to Harris, and that she furnished the money with which he purchased from Dixon and Rodgers the other two thirds of said mine, and that he purchased the same from them, and took the legal title thereto in his own name at her direction and request; that thereby a trust resulted in her favor for said two-thirds interest; that the relocation of the mine in March, 1880, and the issuance of a patent therefor in his own name, was made in pursuance of his statements and representations to her that he would hold the same in trust for her, and would manage the same at her direction and for her benefit; that she at all times believed that her marriage to him was valid and binding, and relied

upon his statements and representations as those of a husband; that she furnished him from her sole and separate property all the moneys used by him in relocating said mine and paying the expenses of procuring the patent therefor; that by reason of these facts a trust resulted in her favor for the whole of said mining claim, and that Harris acknowledged the existence of the trust, and did not repudiate the same until shortly before his death. Similar allegations are made in regard to the purchase by him of the Junietta Mine, from which the plaintiff claims a resulting trust in her favor for the whole of that mine.

The court found that for many years prior to the time of the relocation by Harris of the Mazeppa Mine,—March 11, 1880,—and until the twenty-sixth day of March, 1892, the plaintiff was the owner of an undivided one third of said mining claim, and that from and after obtaining the patent for the mine, until March 26, 1892, Harris was the owner in his own right of a two-thirds part of said mine, and held the remaining third in trust for the plaintiff; that the said relocation of the mine by Harris, and his procurement of a patent therefor in his own name, was, as to two thirds of the mine, for his own use and benefit, and for the use and benefit of no other person; that on March 26, 1892, the plaintiff conveyed her interest in said mine to Harris, and that Harris was thereafter, until the time of his death, the sole owner of the entire mine; that the plaintiff was never interested, either as owner or otherwise, in the Junietta Mine, but that Harris at the time of his death, and for many years prior thereto, was its sole owner. The court found, against the allegations of the plaintiff, that Harris agreed with her to hold any of said property in trust for her, or that he did hold any in trust for her, except as to the one-third interest in the Mazeppa Mine, or that she furnished the money with which he purchased the two-thirds interest in the Mazeppa Mine, or any portion of the purchase price for the Junietta Mine, or that the same was purchased for her use and benefit, or that he ever admitted or acknowledged that he held the same in trust for her.

Upon these findings the court rendered judgment in favor of the defendants, and that the plaintiff take nothing by her action. Plaintiff afterwards asked the court to vacate the

said judgment and enter judgment upon the findings in her favor. This motion was denied, as was also a motion by her for a new trial. The appeals herein are from these two orders, and also from the judgment.

As at the time of the plaintiff's marriage to Harris he had a wife living in Georgia, the plaintiff never became his wife, and their respective rights to the property in question, flowing from the subsequent dealings and transactions between them, are to be measured without reference to the rights and obligations of husband and wife. The plaintiff does not in her complaint claim the property to be hers by virtue of having been the wife of Harris, but upon the ground that it was held by him in trust for her. The ground upon which she relies for this claim is, that the Gem Mine was her separate property, and that the purchases by Harris of the Junietta Mine and the two-thirds interest in the Mazeppa Mine were made with moneys which were taken by him from that mine, and that he purchased the same at her direction and request. She claims that the finding of the court to the contrary is not sustained by the evidence.

In support of this claim she sought to show that Harris was without any means of his own, and that whatever property he acquired was the result of his working the Gem Mine. The testimony before the court did not, however, require it to hold that Harris had no property other than the proceeds of his working the Gem Mine, or that what he took from that mine created any relation to the plaintiff other than that of debtor therefor. The plaintiff testified that when they were married she asked him to take care of her property and see that everything was taken care of, and that she allowed him to work the mine and hire men, and that she had no agreement with him. It does not appear that prior to 1877 the mine yielded anything beyond the cost of the labor therefor. Nor is there any evidence of any specific amount of gold that was taken from the mine by Harris. The evidence shows that although Harris worked the Gem Mine from the time of their marriage in 1873, no great amount of gold was taken therefrom for several years, and it was shown that Harris during this time was engaged in prospecting and working other mines, as well as dealing in mining properties.

In 1880 a mill was put upon the mine, and during a few years thereafter a large amount of gold was taken therefrom.

Much discussion is given in the briefs to the proposition that a resulting trust was created in the plaintiff from the purchase by Harris from Dixon and Rodgers of their interest in the Mazeppa Mine. We find it unnecessary to enter upon an examination of this question, inasmuch as the plaintiff, by the agreement of March 26, 1892, conveyed to Harris all her claim to any and all property other than the Gem Mine "owned or claimed" by him, or which he might thereafter acquire. The finding of the court that the Mazeppa Mine was included in this conveyance is sustained by the evidence. The entire title to the mine was at that time in Harris, by virtue of the patent, and in the absence of testimony to the contrary it must be assumed that he claimed that it was his own. At the time the plaintiff signed this agreement she did not assert any claim to it, and in reply to a question from her at that time Harris said that he could get a living out of that mine, and he immediately afterwards went to the mine and lived there. It does not appear that the plaintiff at any time during the life of Harris made any further claim to this mine. After the plaintiff had executed the agreement, and while Harris was still living apart from her, she assented to his borrowing five hundred dollars from her sons, and advised them to accept from him a mortgage upon the Mazeppa Mine.

The rule is well settled that one who would claim the ownership of property of which the legal title stands of record in another, or that the same is held by such person in trust for the one so claiming, must establish such claim by evidence that is clear, satisfactory, and convincing. (*Woodside* v. *Hewel,* 109 Cal. 481; *Plass* v. *Plass,* 122 Cal. 3.) Whether the evidence in any particular case is of this character must be determined by the trial court, and its determination thereon will be accepted by this court as conclusive. In the present case the superior court held that the evidence before it was not sufficient to sustain this claim of the plaintiff, and we cannot say that the evidence required a different conclusion.

The court did not err in permitting the witness Rooney to testify respecting the transaction of March 26, 1892. At that time he was acting as the attorney for both parties, and

in such a case the rule prohibiting an attorney from testifying as to the communications of his client is inapplicable. (*Estate of Bauer*, 79 Cal. 304; *Murphy* v. *Waterhouse*, 113 Cal. 467;[1]  *Hurlburt* v. *Hurlburt*, 128 N. Y. 420.[2]) The objection of the appellant to the ruling of the court admitting in evidence her answer in the contest upon the probate of the will cannot be considered. At the time the ruling was made it did not appear that there had been an amended answer filed. No motion was afterwards made to strike out the evidence thus received. Moreover, the plaintiff could not have been injured by the evidence.

The judgment and orders are affirmed.

Garoutte, J., and Van Dyke, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.

136  385
f148 160

---

[1] 54 Am. St. Rep. 365.        [2] 26 Am. St. Rep. 482.