[Civ. No. 12577. First Dist., Div. Two. Apr. 20, 1944.]

E. H. LEITCH, Appellant, v. DOROTHY WILSON GAY, as Administratrix, etc., Respondent.

Harold H. Price for Appellant.

Robert W. Harrison and Abraham Setzer for Respondent.

STURTEVANT, J.—The plaintiff commenced this action to obtain a decree enforcing a trust as to certain moneys alleged to be held by Dorothy Wilson Gay as the administratrix of the estate of her father, Homer Wilson. The trial court made findings in favor of the defendant. From the judgment entered thereon the plaintiff has appealed.

The controversy arose out of the following facts. Heretofore Jeanne Queirolo was the owner of some quartz mining claims in Mariposa County known as Lafayette and Lafayette Extension. She entered into a contract with Homer Wilson under the terms of which the latter was entitled to enter and operate said mines and, according to the terms of the contract, to purchase said mines. That contract was made on the 5th day of October, 1935. Thereafter Homer Wilson transferred to this plaintiff, E. H. Leitch, an undivided one-

half interest in said contract. It soon transpired that they did not have sufficient moneys to operate the mine and they entered into negotiations with Mrs. Irene Van de Carr. Later she, together with C. L. Duncan, agreed to take over the claims and operate the same. A formal contract was made with her. She failed to keep her agreement and the plaintiff and Wilson were compelled to commence legal proceedings to set aside the contract and obtain possession of the mines. They employed Luther Elkins, Esq., to act as attorney for both of them.

To maintain said action both Leitch and Wilson served on Mrs. Van de Carr notices of rescission alleging certain fraudulent representations on her part. Leitch assigned his rights to Wilson. The latter commenced an action in Mariposa County asking that the said contract between Leitch and Wilson on the one hand, and Mrs. Van de Carr, be rescinded and that damages be awarded against Mrs. Van de Carr. In that action Wilson recovered a judgment for $6,000 as damages. Later in the Superior Court of Alameda County he filed an action in the nature of a creditor's bill against Mrs. Van de Carr attacking certain transfers made by her. In the meantime Wilson assigned a one-fourth interest in the judgment rendered in the Superior Court of Mariposa County to his attorneys. Later said controversy was settled by a compromise by the terms of which Mrs. Van de Carr agreed to pay and did pay $3,000 in settlement of the claim of the plaintiff in the Mariposa action.

Before commencing said action in Mariposa County, the plaintiff alleges that he and Wilson entered into a formal contract which the plaintiff set forth in his complaint as "Exhibit A, Agreement," hereinafter called Exhibit A. It provided:

"This memorandum of agreement made at San Jose, California, this —— day of April 1938, by and between Homer Wilson, first party, and E. H. Leitch, second party.

"Witnesseth:

"In consideration of the mutual and reciprocal covenants hereinafter contained, it is agreed between the parties hereto as follows:

"(1) The parties hereto shall forthwith commence and prosecute to final determination a suit against Irene Van de Carr, Gold Valley Mining Corporation (a California corporation)

and C. L. Duncan (and possibly others) to compel the assignment to the parties hereto by said Irene Van de Carr, Gold Valley Mining Corporation and C. L. Duncan of contracts now held by said Gold Valley Mining Corporation to purchase what are known as the Lafayette, Lafayette Extension and Geneva Lode Claims situate in Mariposa County, California, which claims constitute what is commonly known as the Lafayette Mine. That the principal ground upon which said suit shall be based will be the false and fraudulent representations made by said Irene Van de Carr as to her ability to finance the purchase, development, equipment and operation of said claims as a gold mine, and the breach by her of her promise to furnish moneys with which to purchase, develop, equip and operate said claims, etc.

"(2) The undersigned agree to share equally the expenses of said suit, which expenses are estimated to be not to exceed $1,000 for the prosecution of said suit to judgment in the Superior Court, and an additional $500 in the event any of the parties of said suit shall appeal from the judgment rendered in the Superior Court in said suit.

"(3) The parties hereto have retained Luther Elkins, Esq., having offices in the Mills Building, San Francisco, California, as their attorney and counsellor at law to represent them generally in their controversy with Mrs. Van de Carr, and to commence for them and to prosecute to final judgment for them their contemplated suit against Mrs. Van de Carr and others, *and they agree to contribute equally to the payment of the fees and expenses of said Elkins in connection with his said employment, also the costs and expenses in connection with said suit to be incurred on their behalf;* and they agree to pay to said Elkins even date herewith the sum of $250.00 as a retainer.

"(4) Each of the parties hereto in addition to making the payments above referred to agree to pay as required one-half of any sums payable on account of the purchase price of the said lode claims in the event said Irene Van de Carr, or said Gold Valley Mining Corporation shall fail to pay the same, and it is agreed that the first party hereto shall, within the next ten days, call upon the owners of said claims and attempt to arrange with them for thirty days' extension of time within which to pay any installment payments falling due upon the contracts to purchase said mining claims in the

event said Irene Van de Carr or said Gold Valley Mining Corporation shall fail to pay any such installments falling due.''

(Here follow paragraphs about matters not involved in this action.)

''In witness whereof, the parties hereto have hereunto subscribed their names the day and year before above written.

Homer Wilson, First Party<br>E. H. Leitch, Second Party.''

In his complaint the plaintiff also pleaded a certain instrument, hereinafter called Exhibit B. It is in words and figures as follows, to wit:

''Exhibit B

''Assignment

''For value received, I, the undersigned, E. H. Leitch, hereby assign and transfer to Homer Wilson, of Hornitor, California, temporarily residing at the Sequoia Hotel, San Francisco, California, all right, title and interest at any time owned or held by me in and to the Lafayette and Lafayette Extension Quartz Mining Claims situate in Sections 10 and 15, Township 4, Range 16 East, M.D.B. & M. Mariposa County, California, upon the understanding and agreement had by me with said Homer Wilson that he will commence a suit in the Superior Court of Mariposa County, California, against Irene Van de Carr of Oakland, California, the Gold Valley Mining Corporation, for a decree of court rescinding the contracts heretofore made by him and by the undersigned with said Irene Van de Carr in respect to said Lafayette and Lafayette Extension Quartz Mining Claims, and a certain tract of land known as the Geneva Claim adjoining said claims, and decreeing that he, the said Homer Wilson is the owner of all rights, now held by said Irene Van de Carr and said Gold Valley Mining Corporation, and each of them, to purchase said Lafayette, Lafayette Extension and Geneva Claims, and any water rights pertaining thereto, and will prosecute said suit to final judgment *at his own cost.*

''And in the event he, the said Homer Wilson, shall prevail in said suit, that he, the said Homer Wilson, will hold as Trustee for me a one-half (½) interest in said Lafayette, Lafayette Extension and Geneva Claims which shall be re-

covered by him in said suit, subject to the payment by me of one-half of any moneys which the court in such suit decrees shall be returned to said Irene Van de Carr or Gold Valley Mining Corporation, or either of them, as a condition for the reassignment and transfer by said Irene Van de Carr and said Gold Valley Mining Corporation, or either of them, of her or its contracts to purchase said claims and said water right, if any, to said Homer Wilson, and that said Homer Wilson shall have a right to purchase my rights in and to said mining claims, as specified in a certain letter written by Luther Elkins, Esq., attorney at law, to me under date of April 12, 1938, the terms, conditions and provisions of which letter have been approved, ratified and adopted by me in writing.

"Dated: April —— 1938

E. H. Leitch"

Basing his claims on the contents of the two documents, Exhibit A and Exhibit B, the plaintiff pleaded and attempted to prove his case.

The plaintiff contends that on the trial he introduced a prima facie case complete in all respects and that the trial court erred in rendering judgment for the defendant and in particular in making a finding that the defendant does not hold one-half of the proceeds obtained from Mrs. Van de Carr in trust for the plaintiff. The defendant replies by contending that none of said claims are sustained by the record. That reply we think is sound. The record shows that the parties wrote numerous documents. Some of them were signed. Which ones were delivered the record does not clearly disclose. Plaintiff's cause of action was to establish a trust. To make out a case he was bound to establish his claim by clear, satisfactory and convincing evidence. (*Harris* v. *Harris,* 136 Cal. 379 [69 P. 23].) Whether he made such proof was a fact to be determined by the trial court and its determination thereon will be accepted by this court as conclusive. (*Harris* v. *Harris, supra.*)

The original of Exhibit A was not produced nor was its absence accounted for. However its terms do not tend to establish a trust and its absence does not in any manner prejudice the plaintiff's case. The plaintiff did not produce Exhibit B. However he did produce a paper similar in form but having written thereon "I approve the above Homer

Wilson.'' Mr. Leitch testified that Mr. Wilson wrote the words ''I approve the above'' and signed his name. Later Mr. Leitch signed his name. By someone, at some time, the date was completed by filling in a blank space with the figures ''27'' causing the date to read ''April 27, 1938.'' Mr. Leitch also testified that when they were preparing the action to be filed in Mariposa County he delivered all of his papers to Mr. Elkins. That action was commenced May 6, 1938. He also testified that he had the assignment dated April 27, 1938, in his files. This action was commenced July 20, 1942. In this action Mr. Leitch did not plead the paper endorsed ''I approve the above Homer Wilson'' but he pleaded the form undated and not signed by Mr. Wilson. After said action was commenced the plaintiff received a bundle of papers from Mr. Elkins. Later plaintiff's attorney found among those papers the document having written thereon the words ''I approve the above Homer Wilson'' and the date April 27, 1938. The record is clear that Mr. Elkins was the attorney for both Mr. Leitch and Mr. Wilson. Whether the papers delivered by Mr. Elkins were the papers of Mr. Leitch, or Mr. Wilson, or both, does not appear. That Mr. Leitch did not make his assignment on April 27, 1938, was evidenced by the following facts. If he did, then why did he plead the wrong instrument? If he knew of the existence of the assignment approved and signed by Homer Wilson why didn't he plead it? On April 29, 1938, he served on Mrs. Van de Carr a notice of rescission of his contract with her. Certainly it cannot be assumed that he attempted to rescind a contract which he had already assigned. Furthermore the Superior Court of Mariposa County made a finding that Mr. Leitch assigned his rights on May 2, 1938. That finding is of much weight under the foregoing circumstances.

All of said papers were apparently prepared by Mr. Elkins. As recited above he acted as attorney for both parties. The record discloses that he maintains an office in the Mills Building in San Francisco. He was not produced as a witness. ■ However it is the settled law that he was a competent witness on the trial of an action between this plaintiff and Homer Wilson, or the representative of Homer Wilson. (*Harris* v. *Harris,* 136 Cal. 379, 384 [69 P. 23]; *De Olazabal* v. *Mix,* 24 Cal.App.2d 258, 262 [74 P.2d 787]; *Baldwin* v. *Commissioners of Int. Rev.,* 125 F.2d 812 [141 A.L.R. 548, 554].) ■ As Mr. Elkins was available as a witness and

was presumptively informed as to when each document was executed and the purpose thereof, he should have been called as a witness. He was not called regarding the papers produced from his possession and the plaintiff attempted to testify regarding such facts. It is statutory that "if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust." (Code Civ. Proc., § 2061, subd. 7.)

In the instant case the court made findings which, among other things, found as follows:

"That the proof of the execution by the decedent Homer Wilson, of that certain purported contract dated April —— 1938, a purported copy whereof is appended to plaintiff's complaint and marked Exhibit A, is absent and insufficient, in fact and in law, and the Court rejects the same and finds said purported contract unexecuted as a matter of fact and law.

"That the proof of the delivery by the decedent Homer Wilson of said purported contract referred to hereinabove as Exhibit A, to the plaintiff E. H. Leitch, is absent and insufficient, in fact and in law, and the Court rejects the same and finds said purported contract, if executed, was not delivered to said plaintiff and undelivered as a matter of fact and law.

"That the proof of the acceptance by said decedent Homer Wilson, of that certain purported Assignment, a purported copy whereof is appended to plaintiff's complaint and marked Exhibit B, in the terms therein stated is absent and insufficient, in fact and in law, and the court rejects the same and finds said purported Assignment unaccepted by the said decedent as a matter of fact and law.

"That the proof of the agreement by said decedent Homer Wilson, to the terms of said purported Assignment is absent and insufficient, in fact and in law, and the Court rejects the same and finds that said Homer Wilson, deceased, did not agree to the terms of said purported Assignment, as a matter of fact and law." In view of the facts hereinabove set forth we may not say the trial court erred in making said findings.

Exhibit A and Exhibit B are both dated the —— day of April, 1938. Each contains a covenant as to the payment of court costs and expenses. The covenant contained in Ex-

hibit A is that such expense will be paid by both parties in equal proportion. That contained in Exhibit B is that Homer Wilson would pay all costs. The original contract of purchase from Mrs. Queirolo provided for certain installment payments by the purchasers at stated times. Exhibit A provided that if Mrs. Van de Carr failed to make said payments Leitch and Wilson would each pay one-half of said installments. In maintaining against Mrs. Van de Carr a suit for rescission, Leitch and Wilson were bound to restore to Mrs. Van de Carr everything of value which they had received from her under their contract with her. One of the covenants contained in Exhibit B is that Leitch and Wilson promised to pay one-half of any moneys which the court in such suit decrees shall be returned to Mrs. Van de Carr. Both documents therefore contained certain conditions precedent. But, in plaintiff's complaint there is no allegation that the plaintiff has done and performed all those things to be done and performed by him. Because the plaintiff was suing on the covenant providing for a trust he claims he was not bound to make such allegations. He cites no authorities. In the absence of a charge of fraud we know of none so holding. (65 C.J. 727-9, 975, 1020; *Robles* v. *Clarke*, 25 Cal. 317, 330, 332.) Under the clear terms of his complaint he bases his claim on the two written contracts which he pleaded. He stands thereon. Before the amount of the trust fund was ascertained it was essential that all facts be presented to the court showing what balance, if any, was held in trust by the decedent. That proof was only partly made. The defendant frequently made the objection that for the foregoing reasons the complaint did not state a cause of action. The objection, under the facts, was well founded.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.