[Civ. No. 7380. Third Dist. Dec. 18, 1947.]

ALICE LOUISE CLYNE, as Executrix, etc., et al, Respondents, v. FRANK A. BROCK et al., Appellants.

Manwell & Manwell for Appellants.

Rich, Weis, Carlin & Fuidge for Respondents.

PEEK, J.—Some time prior to 1920, defendant Frank Brock purchased a ranch from his mother Jeanette M. Brock, giving her a note and mortgage for the unpaid balance of the purchase price. This was followed by a note and trust deed dated October 25, 1927, which apparently was a renewal of the original note and mortgage, and which in turn was followed by a trust deed and note dated October 5, 1932, in the amount of $25,000. All of said instruments, except the first, were signed by Frank and his wife Ethel, the other defendant herein. Five years later Frank and Ethel entered into an agreement with Jeanette wherein they acknowledged that neither the last-mentioned note nor the interest thereon had been paid. They further agreed to pay the same on demand and waived the statute of limitations. On December 1, 1937, a typewritten endorsement, which was signed by Frank and Ethel and accepted by Jeanette stated the balance to be the sum of $20,000. Further endorsements on the note showed six interest payments had been made from 1938 to 1941. Jeanette died July 27, 1945, and shortly thereafter proceedings were instituted to probate her will. Plaintiff Alice Louise Clyne and defendant Frank Brock were named as executors thereof. On November 19, 1945 the present action was filed. All of the parties to said action except Ethel are the children of Jeanette.

By their complaint plaintiffs allege that decedent was 94 years of age at the time of her death, and that during the year immediately preceding that event, was failing both physically and mentally; that all of her children except her son Isaac and defendant Frank resided some distance from her home in Wheatland; that defendants lived only one block from decedent and were constantly with and cared for her during the winter of 1944-45; that during such time Jeanette counseled with defendants concerning her financial affairs and reposed great confidence and trust in them; that relying upon the false and fraudulent representations of defendants that their obligation to her, as evidenced by said note and trust deed of October 5, 1932, had been paid in full, decedent was induced to and did execute a request for a full reconveyance of said trust deed which request was complied with by the trustees named therein. The complaint concluded with a prayer that the court determine the amount owing to the estate by defendants Frank and Ethel; that the said deed of reconveyance be set aside and canceled, and that the said ranch property be

declared to be subject to the lien thereof. By an amendment to plaintiffs' complaint it is further alleged that the purported signature of Jeanette to said request for said reconveyance was forged. Defendants' answer denied that any monies were owing to said decedent by virtue of said note and trust deed, and alleged that the same had been repaid prior to her death.

From the exhaustive findings of fact, which in the main followed the allegations of the complaint, the court concluded that defendants were indebted to the estate in the principal sum alleged, together with interest; that a confidential relationship existed between decedent and defendants; that the signature of decedent to the request for reconveyance of the deed of trust was obtained fraudulently or was a forgery; that the reconveyance issued pursuant to said request should be canceled and that the real property be subject to said trust deed and lien thereof.

Defendants' appeal is from the judgment entered in accordance with said findings of fact and conclusions of law and from the order of the trial court denying their motion for a new trial.

Appellants' first contention, that the Constitution of this state guarantees a trial by jury (art. I, § 7) and the court abused its discretion in denying this right to them, is not well founded. The right so guaranteed by the Constitution is that of the right as it existed at common law or in those cases triable by a jury as a matter of right under the common law. (15 Cal.Jur. 325.) Here the primary result sought by plaintiffs' action was the cancellation of the deed of reconveyance and that the real property be held subject to the deed of trust. Such action is clearly equitable in its nature and is not triable by jury. (*Pomeroy* v. *Collins*, 198 Cal. 46 [243 P. 657]; *Proctor* v. *Arakelian*, 208 Cal. 82, 98 [280 P. 368]; *Angus* v. *Craven*, 132 Cal. 691 [64 P. 1091]; *Santa Ana M. & I. Co.* v. *Kinslow*, 30 Cal.App.2d 107, 110 [85 P.2d 899].)

Appellants' next contention, that the court erred in refusing them the right to obtain a handwriting expert of their own choosing as a witness in their behalf, is likewise without merit. An examination of the transcript discloses that the trial court desired testimony by an expert concerning certain entries appearing in a small receipt book owned by Frank, which entries related to payments alleged by defend-

ants to have been made to decedent. These entries plaintiffs contend were forged. Specifically, the court stated:

"I wonder if counsel on each side would like to have this case continued for a proper time and have this book submitted to one of our experts to be chosen by the Court, to determine from a scientific standpoint whether or not those entries were in fact made as stated, in this book at the times stated."

In answer to the court's suggestion, the following colloquy occurred between the trial judge and counsel:

"Mr. Rich: Yes.

"Mr. Manwell: I haven't looked. I have no objection.

"Mr. Fudge: I don't know who your Honor has in mind.

"The Court: It will be one of the recognized authorities along this line. Would that be agreeable to counsel?

"Mr. Manwell: I haven't looked at it. Certainly."

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"The Court: The court would rather have the matter left to the Court. It will be one in whom I am sure counsel would have absolute confidence in.

"Mr. Manwell: "Certainly."

Thereupon, the case was continued one month so that such an examination could be made, and upon reconvening of the court on May 3, the court stated as follows:

"The Court: I might state, as counsel remember, at the close of the taking of testimony on April 3rd, the Court suggested, or asked for a stipulation that the matter might be continued for one month and that this Court be authorized to submit Exhibit B to an expert of its own choosing, and that the expert's testimony be given at this time. That stipulation was given. I will state that same afternoon the Court forwarded a letter to Mr. Heinrich, who is present in Court now."

Thereupon, Mr. Heinrich was sworn and testified that instead of the entries in the account book being made by defendants on different dates over a period of years, the entries were made continuously as one set of writings. After the witness had explained how he arrived at that conclusion and was cross-examined by counsel for appellants, the following statement was made to the court:

"Mr. Manwell: If your Honor please, I would like to have an opportunity, if these exhibits will be filed in the Clerk's office—the original book will be there—if we could have another expert."

In answer to the request, the court replied: "That will not

be allowed, because under the stipulation, the Court may submit the writing to any expert of his choosing, which the Court had absolutely confidence in and that was stipulated to and we would only be getting into controversial matters, and the request will not be allowed. That is one of the reservations made at the time of the closing of the case and isn't part of the stipulation.

"MR. MANWELL: We will ask it be submitted on briefs and we may determine something along that line, during submission. . ."

Therefore, it appears that appellants did not ask for an expert of their own selection until it was ascertained that the testimony of Mr. Heinrich was against them. In effect, they gambled on his testimony and lost. Appellants cite no authority, nor do we know of any, to support their contention that they should have been allowed to obtain an examination of the writings by an expert of their own choosing after learning that the testimony of the expert chosen by the court pursuant to stipulation of counsel was unfavorable to their position.

▇ Appellants next attack the findings, that they were guilty of fraud and/or forgery, as being wholly unsupported by the evidence. The only evidence of payment of the $20,-000 appears in testimony by Frank that he kept a book in which he entered payments as made. However, this is the same book containing the entries which the handwriting expert testified were all posted at one and the same time and not as individual items entered at the time of the purported payments.

The law firm appearing for respondents herein represented and did income tax work and other business for both decedent and appellants. Two members of the firm, Messrs. Weis and Carlin, were the trustees in the deed of trust. Decedent's income tax returns were made at her home by Mr. Carlin and according to this witness at no time did she or Frank tell him the indebtedness had been paid. Carlin also testified that pursuant to a request from Frank he prepared a reconveyance of the trust deed as well as a form of request from decedent to the trustees that they execute the reconveyance, and mailed such documents to Frank. Later, the request purportedly signed by Jeanette was returned to Carlin by Frank, and the reconveyance executed by the trustees. There is evidence that this instrument, after being recorded, was mailed to Frank, accompanied by a statement of the fee for drafting and record-

ing the same, which Frank paid. However, he denied receipt thereof but at no time did he complain to the attorneys of his failure to receive the document. There was further testimony that decedent kept an account book of receipts and disbursements which was seen in the house at the time of her death but disappeared thereafter and had not been found up to the time of trial. Also, there is testimony that no mention of payment of the debt was made by Frank to any of his sisters or brothers until after the death of their mother. Contrary to Frank's claim that he paid his mother, Mrs. Martha Waltz, his sister, in addition to testifying that she never heard of the payment until after her mother's death, stated that in 1943 her mother tried to have her take over the note of Frank and Ethel.

As previously stated, appellants were constantly in the home of the elderly decedent during the period immediately preceding her death. They produced neither a single canceled check nor other evidence of payment except the aforementioned book of Frank's, the entries in which the handwriting expert found were all entered at the same time. Additionally, the note alleged to have been paid was still in the possession of the decedent in her safety deposit box at the time of her death, which fact of itself raises an additional presumption that the note was wholly unpaid. (*Levey v. Henderson,* 177 Cal. 21 [169 P. 673] ; *Bank of Italy v. Bettencourt,* 214 Cal. 571 [7 P.2d 174] ; *Egilbert v. Hall,* 44 Cal.App.2d 305 [112 P.2d 291].)

While it is true that neither the mere relationship of mother and son nor the advanced age of the testator nor her physical disabilities alone are sufficient to raise a presumption of fraud or undue influence (*Best v. Paul,* 101 Cal.App. 497 [281 P. 1089]), however, where, as here, one who bears a confidential relationship to his or her benefactor has derived a benefit from such relationship the law places upon him the burden of showing that the "transaction out of which the advantage arose was fair and just in all of its particulars." (*Hatch v. Penzner,* 44 Cal.App.2d 874 [113 P.2d 295].)

All of such facts, including the presumptions previously mentioned, present ample evidence to sustain the findings of the trial court on this issue.

The next and final contention of appellants is that the court erred when it permitted the attorneys, who had acted over a period of years for all parties, to testify over

the objection of counsel for defendants to confidential information gathered while acting in such capacity.

An examination of the transcript reveals that with one exception no objection was interposed to the testimony of the attorneys or their secretary concerning the transactions here in question, and that counsel for appellants cross-examined each witness on the evidence so given. By failing to properly and timely object to such testimony they thereby waived any infirmity the testimony might have had as a privileged communication. (*Faylor* v. *Faylor,* 136 Cal. 92 [68 P. 482] ; 27 Cal.Jur. 55.)

The one exception was the objection by appellants to questions propounded to Attorney Carlin relative to Frank's income tax returns, which the trial court properly sustained on the ground that the information was privileged.

However, it is well established that where, as here, persons have mutually employed the same counsel and have discussed freely their problems in the presence of one another and their counsel, the reason for the rule of privilege has been destroyed, for each party by such concerted action thereby has waived the right to place such communications under the shield of privilege. (*Leitch* v. *Gay,* 64 Cal.App. 2d 16, 22 [147 P.2d 631] ; *De Olazabal* v. *Mix,* 24 Cal.App. 2d 258, 262 [74 P.2d 787] ; *Croce* v. *Superior Court,* 21 Cal. App.2d 18, 19 [68 P.2d 369] ; *Gerety* v. *O'Sheehan,* 9 Cal. App. 447, 450 [99 P. 545] ; *Harris* v. *Harris,* 136 Cal. 379 [69 P. 23].)

The judgment and order are affirmed.

Adams, P. J., and Thompson, J., concurred.