GRIFFIN, P. J.
Plaintiff-appellant, aged 65, brought this action against defendant-respondent, aged 77, alleging that they entered into an oral agreement of partnership in June 1942 for the purpose of owning and operating a dairy business on a 10-acre farm with about 20 or more head of cattle (about eight of which were milk cows); that plaintiff agreed to contribute her labor and services and assume one-half of the indebtedness of defendant and that defendant agreed to contribute his interest in all real and personal property he then owned, and each would share therein on a 50-50 basis; and that each did carry on said partnership business until September 17,1957. Certain described real and personal property is listed as assets of the partnership and it is alleged that the partnership was dissolved on September 17, 1957.
As a separate cause of action, plaintiff alleged she was employed by defendant as a farm laborer from June 1942 to September 17, 1957, and that defendant agreed to pay her the reasonable value of her services and promised to leave plaintiff all of his property by will as compensation for her services and that no such payment was ever made; that the reasonable value of such services was $15,000.
Plaintiff seeks one-half of the undivided interest in the real and personal property of defendant and seeks an accounting, or, in the alternative, the sum of $15,000.
Defendant denied generally these allegations. By stipulation, the second cause of action was dismissed. An amendment to the answer to the first cause of action alleged that from
“some time in the month of June, 1942, until September 17, *465 1957, plaintiff resided in the defendant’s residence, on real property then owned hy the defendant, and during said period she rendered services consisting of the performance of household duties and work in and about his farm, and that as compensation therefor she received her living expenses of every description, and that during a portion of such time a minor daughter ... 11 years of age . . . and a minor son ... 13 years of age ... of the plaintiff were wholly supported hy the defendant, the support of her daughter ending upon the daughter’s marriage; that no partnership agreement was ever made between the parties; that the only arrangement or understanding between them was that in addition to her said compensation he would execute a will leaving to her, if she survived him, all of his estate, and if she did not survive him, then his estate would go to her daughter, Bonnie . . .; that the consideration for said will was that the plaintiff would continue to reside in the defendant’s residence and would continue to render her services in and about the performance of household duties, and work in and about his farm; that he executed such a will in the month of April, 1946, in accordance with their said understanding and agreement with each other, but that, contrary to said understanding and agreement, and without any reasonable excuse therefor, the plaintiff on or about September 17, 1957, left the common abode of the plaintiff and defendant, and ever since has failed to render her services as aforesaid, and that the consideration for his execution of said will was thereby destroyed; that when the plaintiff moved into defendant’s residence in the month of June, 1942, with her said two minor children, she was the wife of one Melvin L. Morris, from whom she was then separated, and from whom . . . she obtained an interlocutory decree of divorce on or about August 12, 1952, and a final decree of divorce on or about November 24, 1954; that said arrangement or agreement between the parties was never reduced to writing hut was entirely oral.”
At the pretrial, the property and its value was agreed upon. The court found generally in favor of defendant and against plaintiff’s contentions and specifically found no partnership agreement existed and the only agreement between the parties was a working agreement under which plaintiff would furnish her services to defendant “in the operation of the dairy and farm of the defendant and would receive therefor a place to live and all living expenses for herself and her two children, and that any profits from the operation of the *466 dairy and farm would be divided equally”; that “the living expenses of the plaintiff and defendant and plaintiff’s children greatly exceeded the profits derived from the operation of the dairy and farm” and accordingly “defendant is entitled to judgment that the plaintiff take nothing by this action.” Judgment was rendered accordingly.
On this appeal plaintiff first challenges the court’s findings and contends that the evidence conclusively proved the existence of a partnership.
Plaintiff separated from her husband in 1942 and was living in an auto camp. Her total assets were $200 and a washing machine. She had three children. Defendant testified she came to his neighboring ranch with the thought of purchasing six head of milk cows so she could help with her living expenses ; that defendant told her :
“If you are so hot to milk cows and you tell me that you want to milk cows and that you can work out in the hayfield and do all this sort of stuff, I’ll tell you what I’ll do. I’ll make you a proposition, ... I’ll furnish you a house, roof over your head and your food and clothing and your food and clothing for your children and their schooling that they’ll have a place to go to from school ... I won’t be responsible for your children. Tour children is your problem but I’ll promise that I’ll see that they are fed and clothed and have a place to go to school from and I’ve got quite a few debts to pay and I’ll have to pay them back. If at the end of the year there’s anything left out of the dairy profits I’ll split it fifty-fifty with you. I ’ll guarantee you that you ’ll get a living and a roof over your head. And if you want to do that and work with me under those conditions, why, you won’t have to buy any cows and you can do it. ’ ’
Defendant stated that she accepted the proposition. She moved to his ranch, with the children, and did a goodly portion of the work.
Plaintiff’s story is that they first discussed the preparation of a formal partnership agreement and defendant said it would be inadvisable at that time because she was a married woman and if anything happened to her defendant would be in partnership with her husband. Defendant denied any conversation about a partnership at any time.
Defendant inherited this 10-acre ranch and other property from his deceased wife. His assets at that time were valued at $12,312.22. Defendant and his wife had a bank account in their joint names opened in 1936. After that date, defendant *467 placed earnings from the ranch, as well as money received from the sale of other property previously owned by him, in this account. The dairy ranch prospered and there was an increase in the number of milk cows. Both defendant and plaintiff worked hard and long hours in producing these accumulations. A home and adequate living were furnished to plaintiff and her two children for several years. The boy remained with them for some time and Bonnie, the girl, for about seven years. Later, another daughter and her husband lived there for about one and one-half years. About January 4, 1946, defendant transferred from his account about $1,300 which he placed in a joint bank account with plaintiff and thereafter the profits were paid into this account and expenses of operating the farm and home were taken from it. No partnership account was opened. The banker testified that he carried such cards but defendant did not apply for this type and that a partnership was not mentioned at the time. There is evidence that loans were made on the crops and other chattels during the period from September 1946 to November 1956 and notes and mortgages were signed by both plaintiff and defendant. They were repaid from their joint bank account. In April 1946 defendant made a will, reciting that for just compensation for services rendered, he gave plaintiff all of his estate on condition she survive him and if not to her daughter Bonnie in trust. In May 1946 plaintiff made a will remitting to defendant all money owing her from him at the time of her death and the remainder to her daughter Bonnie, in trust. Plaintiff testified in respect to this transaction that defendant thought they should have reciprocal wills for the protection of their respective interests in the business but she did not recall anything being said at that time concerning a partnership agreement. Defendant testified they prepared reciprocal wills, at their attorney’s suggestion, to protect both of them in their business interests, but nothing was said about a partnership agreement and that there was in fact no partnership agreement. Plaintiff testified everything proceeded nicely until about 1956 when her sister told her that reciprocal wills were not the proper arrangement and that they could be revoked at any time; that she (plaintiff) then wanted defendant’s name on partnership papers for her protection; that she discussed this with defendant and they both agreed that such a document would be drawn and new wills executed; that they went to see an attorney about drawing up these documents and wills; that the instruments were prepared and sent to *468 them; that they were read, in the presence of each other and members of plaintiff’s family; that defendant signed his will; that plaintiff refused to sign her will unless defendant also signed the partnership agreement; that he refused to do so and an argument ensued and plaintiff left the home and said she would go out and obtain another job and that she did so. This action followed.
A public accountant checked the records of the operations of the dairy ranch and other nonreal estate transactions between June 1, 1942, and September 17, 1957, and said they indicated an income of $72,541.86 and expenses of $63,220.13, showing a net profit of $9,321.73. He indicated that personal living costs of the parties for the period amounted to $14,405.49 showing a deficit of $5,083.76. Upon this evidence, the court found there was no profit to divide between plaintiff and defendant as a result of their agreement. The evidence supports this conclusion. There was evidence that some of the money was spent toward replacement of machinery and improvements around the ranch and there was considerable increase in the number of cows. Plaintiff produced the testimony of neighbors and other witnesses who testified that defendant referred to plaintiff as his “partner,” which defendant denied. There was no evidence that partnership income tax returns were filed during this period. There was never a partnership bank account opened or maintained. None of the financial statements furnished the bank showed a partnership in existence. Execution of the wills by the parties in 1946 was some evidence indicating no partnership agreement existed. Plaintiff was never required to sign any of the deeds where title to any of the defendant’s land was involved in a sale. Defendant conceded that plaintiff owned a one-half interest in the joint bank account insofar as the net profits were concerned.
There is a decided conflict in the evidence as to a partnership being formed by these parties. Where there is substantial conflict in the evidence it is the duty of this court, under the well established rules, to resolve that conflict in support of the court’s finding. (Primtn v. Primm, 46 Cal.2d 690, 693 [299 P.2d 231].) Under this rule, we must conclude that the trial court was justified in finding that no partnership existed, and that the agreement, alleged, by the defendant to exist between the parties, was the correct one, even though it might reasonably appear that a contrary finding could be equally supported.
*469 The finding that the cost of living for the period in question exceeded the net profits does have evidentiary support, although a different finding might well have been justified.
It is next argued that the trial court erred in sustaining defendant’s claim of privilege to conversations between the defendant and his attorney who drew the partnership agreement in 1957 when plaintiff’s attorney attempted to elicit this conversation from the defendant. Defendant testified he first went to see this attorney alone, gave him no instructions but merely made an appointment for a second visit at which he and plaintiff expressed a desire for the preparation of reciprocal wills and a partnership agreement. The recitals of this agreement, a copy of which is in evidence, indicates a partnership agreement existed between them as of July 1, 1942, and recites equal contribution to capital of the partnership and equal ownership of all assets by the parties, whether standing in the name of either or held by them as joint tenants. Defendant denied any conversation with his attorney in respect to the preparation of a partnership agreement on the first visit. He indicated it was for some other purpose. Defendant’s deposition indicates he had given his attorney the substance of the partnership agreement he wished prepared for himself and plaintiff on the first visit. Plaintiff claims that if two persons engage an attorney to represent both of them, neither can assert the privilege in a subsequent action between them. (Citing Clyne v. Brock, 82 Cal.App.2d 958 [188 P.2d 263]; Croce v. Superior Court, 21 Cal.App.2d 18 [68 P.2d 369].)
It is defendant’s claim that he consulted this attorney as his own, in confidence, and plaintiff was not present and she did not become the attorney’s client until a later date when they both went to see him about the preparation of the documents. In 97 Corpus Juris Secundum 795, section 281, it is said:
“The testimony of an attorney as to a transaction in which two or more parties consult him, for their mutual benefit, is not privileged in an action between such parties or their representatives involving such transaction; but communications to the attorney are privileged as against the common adversary or third persons, or as between the parties themselves where the communication was made in confidence to the attorney by one of the parties at a time when the other was not present. ’ ’ The attorney was not called as a witness to impeach the testimony of defendant.
*470 Regardless of the propriety of the court’s ruling, we are convinced no prejudicial error resulted. Defendant’s testimony on the witness stand was impeached by the testimony set forth in his deposition. The instruments prepared speak for themselves and the respective parties testified fully as to their agreement in respect to their execution and their intent. The trial court found that these instruments were never executed. Defendant subsequently destroyed the will he had signed and the partnership agreement, as drawn, was never signed.
No error resulted in receiving the first two wills executed in 1946 in evidence over plaintiff’s objection. This evidence was in harmony with defendant’s answer and to refute a claim of partnership.
Plaintiff next argues that the trial court did not specifically find what items of expense were allowable or were charged against the cost of the dairy operation and what specific balance of net profit was indicated, year by year, so that a determination could be made as to whether the cost of living did exceed the net profits. In his memorandum opinion filed herein, the trial judge stated:
“After a careful weighing of all the evidence, the Court feels that a preponderance of the evidence favors defendant’s theory and the Court finds that there was no partnership. . . . Prom the testimony of the accountant Vollmer, which is not seriously disputed, it appears that the living expenses of the plaintiff and defendant and children exceeded by about $5,000.00 the profits derived from the operation of the farm, excluding the real estate transactions, which are not to be considered. It follows that plaintiff has nothing coming and judgment must be for the defendant.”
The evidence sufficiently supports the findings and it is not indicated that if the findings had been more specific a different result would have followed.
Judgment affirmed.
Shepard, J., and Coughlin, J., concurred.