**Bonnie L. RANCOURT et als.**

v.

**CITY OF BANGOR, Noel Cote, and Northeast Equities Associates.**

Supreme Judicial Court of Maine.

April 17, 1979.

Eaton, Peabody, Bradford & Veague by Bernard J. Kubetz (orally), John E. McKay, Bangor, for plaintiffs.

Twitchell, Gray & Linscott by Orman G. Twitchell (orally), Bangor, for Northeast Equities Associates.

Rudman, Winchell, Carter & Buckley by John M. Wallach (orally), Bangor, for Noel Cote.

Robert E. Miller, City of Bangor Legal Dept., Bangor, for City of Bangor.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY and GODFREY, JJ.

DELAHANTY, Justice.

The plaintiffs appeal from a decision of the Superior Court, sitting in Penobscot County, dismissing their complaint. They contend that their motion to file a supplemental complaint, made pursuant to M.R. Civ.P. 15(d), should have been granted. We agree and sustain the appeal.

The plaintiffs describe themselves as "residents" of the Ohio Street section of Bangor. For many years, the plaintiffs' neighborhood was classified by the Bangor Zoning Ordinance as an "agricultural" area where the construction of large, multiple-unit apartment houses was forbidden. On June 10, 1974, the Bangor City Council amended the Ordinance in such a way as to rezone certain portions of Ohio Street as "Residential C," the highest density residential classification. On July 8, 1974, the plaintiffs, acting in reliance on M.R.Civ.P. 80B, filed a complaint in Superior Court claiming that the June 10 amendment was illegal in that (1) the "Residential C" classification given to certain portions of their neighborhood permitted a higher residential density than that sanctioned by the City of Bangor's Comprehensive Plan, in violation of 30 M.R.S.A. § 4962, and (2) it was enacted solely to accommodate defendants Cote and Northeast Equities,[1] both of whom owned property within Ohio Street's "Residential C" area, and as such constituted illegal "spot zoning." The City of Bangor filed its responsive pleading on July 25, 1974.

On September 23, 1974, the Bangor City Council enacted a new Zoning Ordinance. Although the new Ordinance changed the zoning classification system, the property in question, with its new "Residential 5" designation, continued to be accorded the highest density residential zoning classification.

---

1. The July 8 complaint named the City of Bangor as the sole defendant in the suit. On motion of the plaintiffs, Cote and Northeast Equities were joined as party defendants by an order dated September 26, 1974. Cote's property, on which he desired to construct a nursing home, was the subject of a recent decision, *Cote v. Zoning Bd. of Appeals*, Me., 398 A.2d 419 (1979).

The plaintiffs responded on October 29, 1974 with a motion to file a supplemental complaint. The proposed complaint alleged that the new Zoning Ordinance "incorporated" the June 10 amendment, inasmuch as the high density zoning allowed under that amendment was carried forth in the new Ordinance, and was illegal for the same reasons that had been set forth in the original complaint. After oral argument, the Superior Court denied the motion without opinion. The plaintiffs subsequently moved the court to make known the findings of fact and conclusions of law underlying its decision. This motion was also denied.[2] Finally, after further litigation not here relevant, the Superior Court entered an order dismissing the plaintiffs' complaint as moot. In its opinion, the court characterized the plaintiffs' July 8, 1974 complaint as a "mere request for a declaratory judgment on the past validity of the amendment of June 10, 1974."

The plaintiffs agree, as they must, that the final decision of the Superior Court finding their original complaint moot is legally unassailable. See Thomas v. Zoning Board of Appeals, Me., 381 A.2d 643 (1978). They argue, however, that their motion to file a supplemental complaint should have been granted and that had it been granted their case would not have been moot. The focus of this appeal is, therefore, on the propriety of the Superior Court's denial of that motion.

■ The courts and commentators who have had occasion to deal with F.R.Civ.P. 15 or with its counterpart, M.R.Civ.P. 15, have properly stressed that the rule ought to be liberally applied to achieve the goal set forth in Rule 1: the "just, speedy and inexpensive determination of every action."

Bell v. United States Department of Defense, 71 F.R.D. 349 (D.N.H.1976); 1 R. Field, V. McKusick, & L. Wroth, Maine Civil Practice § 15.1 (1970); 3 Moore's Federal Practice § 15.02 (1978); 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1471 (1971). More specifically, the rationale underlying M.R.Civ.P. 15(d)[3] is that a party should not be put to the expense and aggravation of commencing a new lawsuit when events bearing on, arising out of, or relating in some reasonable way to the matters originally pleaded occur after the complaint has been filed. See 1 R. Field, V. McKusick, & L. Wroth, supra at §§ 15.1, 15.7. Unless the party objecting to the supplemental pleading can show that his position will be prejudiced or that the litigation will be unreasonably delayed by the allowance of a supplemental pleading, the court should ordinarily grant the motion. New Amsterdam Casualty Co. v. Waller, 323 F.2d 20 (4th Cir. 1963), cert. denied, 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964); McHenry v. Ford Motor Co., 269 F.2d 18 (6th Cir. 1959); see 6 C. Wright & A. Miller, supra at § 1510.

■ In the instant case, neither the Superior Court, with its opinionless ruling, nor the defendants have supplied us with a single tenable reason why plaintiffs' motion should have been denied. For its part, the City of Bangor argues that when the June, 1974, amendment was replaced by a new Ordinance, the plaintiffs' complaint was rendered irretrievably moot. In this view, the plaintiffs' only option was to start over again by filing a new complaint and reserving all defendants. Although this approach might have been acceptable in an earlier era when pleadings played a crucial role in the course of litigation, the modern

---

2. In the same motion, the plaintiffs also requested, in the alternative, that the court either report its decision to the Law Court, grant the plaintiffs relief from its ruling on grounds of excusable mistake or neglect, or reconsider its ruling. The motion was denied in toto.

3. M.R.Civ.P. 15(d) provides as follows:
    Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental

pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

approach has been to de-emphasize their importance. Indeed, Rules 1 and 15 encourage courts and litigants to seek the simplest, least expensive, and most expeditious method of resolving disputes.

> The philosophy of the rules is that pleadings are not an end in themselves but only a means of bringing into focus the area of actual controversy. . . . A party should not be precluded by the technicalities of pleading from presenting his claim or defense on its merits unless the pleadings have misled the opposing party to his prejudice. 1 R. Field, V. McKusick, & L. Wroth, *supra* at § 15.1.

In cases roughly analogous to the one here presented, federal courts have found Rule 15 to be a useful and appropriate tool for managing litigation. In *United States v. Springer*, 491 F.2d 239 (9th Cir.), *cert. denied*, 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974), the Ninth Circuit affirmed a district court order holding a federal lands case in abeyance pending administrative action by the Department of the Interior. The district court's decision to allow the government to supplement its pleadings following a final administrative determination was held to be "plainly authorized" by Rule 15(d). *Id.* at 242. Similarly, in *Schempp v. School District*, 195 F.Supp. 518 (E.D.Pa. 1961), a case not dissimilar to the one at bar, the plaintiffs had successfully sued to enjoin statutorily mandated Bible reading in public schools. While the case was on appeal to the United States Supreme Court, the act was amended. The Supreme Court remanded the case to the three-judge court for further proceedings in light of the legislative change, and the plaintiffs moved under F.R.Civ.P. 15(d) to supplement their complaint to reflect the amendment. In granting the motion, the three-judge court concluded that "a useful purpose would be served by permitting [the supplemental complaint] to be filed . . . ." *Id.* at 519. These cases reflect the sound view that litigation should not have to be recommenced merely because legislative or administrative action has to some degree altered the status of the lawsuit.

To say the least, we do not find persuasive defendants' common contention that "the claims advanced in Plaintiffs' Supplemental Complaint bear little or no relationship to the original Complaint . . . ." In fact, both complaints attacked existing Bangor Zoning Ordinances as being inconsistent with the City's Comprehensive Plan and as constituting spot zoning. Although, as the defendants assert, there may be a variety of technical distinctions between the type of high density housing permitted by the June, 1974, amendment and that permitted by the new Ordinance, the gravamen of the plaintiffs' complaint remained unchanged despite the adoption of the new Ordinance. That being the case, the plaintiffs fully satisfied the requirement that the events set forth in the supplemental complaint relate to the original claim.

■ Finally, the defendants correctly state that the resolution of Rule 15(d) motions is committed to the sound discretion of the trial court. *Minnesota Mining and Manufacturing Co. v. Superior Insulating Tape Co.*, 284 F.2d 478 (8th Cir. 1960). However, where no acceptable reasons can be produced in support of the presiding Justice's ruling, we think it safe to hold that he abused his discretion.

The entry is:

Appeal sustained.

Case remanded for further proceedings consistent with this opinion.

ARCHIBALD and NICHOLS, JJ., did not sit.