STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-2019-81

ANDREW NOYES,
    Plaintiff

**ORDER ON PENDING MOTIONS**

v.

CHARLES NOYES,
MARY LOU NOYES,
NOYES FAMILY FARMS, LLC
NOYES REAL ESTATE, LLC
    Defendants

The following motions are before the court for disposition: Motion to Dismiss pursuant to M.R.Civ.P. 12(b)(6) filed by all the Defendants, and; Motion to Amend the Complaint filed by the Plaintiff. The background set forth below is taken from the allegations in the Plaintiff's Complaint.

## BACKGROUND

For many years, Mary Lou and Keith Noyes owned and operated the Noyes Family Dairy Farm (the "Farm"), a sole proprietorship located in Albion, Maine. The Farm, as of December 2016, consisted of 500-600 acres of land, plus approximately 100 cows and 100 young stock, and a full line of equipment and machinery. As of an April 2016 appraisal, the Farm was worth roughly $ 1.3 million, including cash amounts totaling over $120,000. After Keith passed away in 2015, he left everything he owned, including his half of the Family Farm, to his wife Mary Lou. Mary Lou, however, wished to eventually get out of the family farming business, and not long after Keith's passing made plans of her own to eventually

1

transfer the farm. This estate plan called for her farm assets to be passed to Andrew and Charles as soon as practicable, as they were the "farming children." Unlike Mary Lou and Keith's other children, Andrew and Charles (or Andy and Chuck) worked on the farm for decades, receiving "little pay or benefits with the universally accepted expectation of someday becoming co-owners."

In or about March 2016, the family hired a consulting company, Farm Credit East, to devise an estate plan for Mary Lou's future and to develop an ownership structure for the transition of the Farm to Andy and Chuck. Over the course of several months, the family, with the help of Farm Credit East and other professionals, came to a basic agreement on the business' successorship and reduced the basic terms to a one-page Statement of Agreement, (the "Agreement") attached to the Complaint as Plaintiff's Exhibit A. Among other terms, the Agreement stated that two limited liability companies would be established, one to which Mary Lou would transfer all of the Farm's operating assets, such as livestock, equipment, and feed inventory, and the second to which Mary Lou would transfer certain Farm real estate. In addition, the Agreement states that Chuck would receive certain real estate, located at 97 Noyes Road and 90 Noyes Road, and that Andy would receive the lot known as "Andy's lot," located near his house at 4 Libby Hill Road. Most importantly, the Agreement also called for Mary Lou to transfer her interest in the LLC's to Andy and Chuck, who would each receive ownership interests of 50%. Mary Lou and Chuck signed the Agreement on November 14, 2016, and Andy signed it on November 27, 2016. Shortly thereafter, Farm Credit East issued its report referencing the Agreement, and provided draft operating agreements for the Noyes Family Farm, LLC, and Noyes Real Estate, LLC. The draft operating agreements showed the ownership interests in profit and loss divided evenly, 50/50, between Chuck and Andy for both LLCs.

2

Throughout this period, Andy continued to work on the Noyes Farm "for minimal compensation and benefits in reliance on his mother's life-long promise to gift half the Farm to him and the other terms of the Agreement, including the conveyance of Andy's Lot." Also, during this time Andy and his wife inquired about the progress of transferring the assets, and neither Mary Lou nor Chuck suggested any intent to rescind the Agreement or the Farm Credit East report. Unbeknownst to Andy, however, on or around June 6, 2017, Noyes Family Farm, LLC, and Noyes Real Estate, LLC, were registered with the Maine Bureau of Corporations identifying Holly Noyes, Chuck's daughter, as the registered agent.

Andy alleges that between December 2016 and the present, Chuck, Holly, and other family members, at the behest of Chuck, attempted to unduly influence Mary Lou and "turn her against Andy and his wife through fraud and intimidation," and that "Chuck (and family members on his behalf) sowed fear and confusion for the purpose of unduly influencing Mary Lou with lies about alleged 'threats' made by Andy's wife and other outrageous falsehoods." Andy alleges that this fraud damaged his relationship with Mary Lou, and caused Mary Lou to violate the Agreement.

Around April 2018, every family member, except Andy, received several deeds conveying Mary Lou's various lots of real estate, pursuant to the estate plan. Andy's deed was delivered months later and, contrary to the Agreement, it was subject to a lease. After Andy inquired about these issues, around June 2018, Chuck told him that the "family" decided that Andy would longer be part of the family business, and that paperwork to that affect would be forthcoming. Andy spoke with Mary Lou on or around June 29, 2018, and Mary Lou replied that Chuck would become the sole owner and operator of the family business. Mary Lou also stated: "it's not what I really want." Later during that same day, Chuck organized a conference call with the other siblings, during which he proposed a number of changes to the Agreement. Andy accepted none of these proposals, but to no avail,

3

as on or around July 1, 2018, and unbeknownst to Andy, Mary Lou transferred 100% of her interest in the two LLC's to Chuck, contrary to the Agreement. Although Andy, through his counsel, filed suit against his family members and the LLCs in April 2019, he continued to work on the family farm until around October 9, 2019, when the Noyes Family Farm, LLC, and Chuck terminated his employment without cause. As a result, Andy has also filed a motion to amend the complaint to include an additional count for breach of employment contract.

## STANDARD OF REVIEW

When reviewing a motion to dismiss under Rule 12(b)(6), courts "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The Court views the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." "A dismissal should only occur when it appears 'beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim.'" *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994) (internal quotations omitted). The general rule is that only facts alleged in the plaintiff's complaint may be considered by the Court during a motion to dismiss, and that if the Court does consider materials outside the pleadings, the motion is treated as one for summary judgment. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43. The *Moody* Court, however, recognized three exceptions to this rule, holding that a court may consider official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint, when the authenticity of such documents is not challenged, without converting the motion to dismiss into a motion for summary judgment. *Id.* ¶¶ 9 – 11. Accordingly, in considering this motion to dismiss, the Court has extensively reviewed the Agreement and Farm Credit East's report.

4

## DISCUSSION

In addition to the amended complaint count for breach of employment contract, Andy brings six counts against the Defendants: Count I – Breach of Contract; Count II – Quantum Meruit; Count III – Unjust Enrichment; Count IV; Promissory Estoppel; Count V – Intentional Interference with Prospective Economic Advantage; and Count VI – Specific Performance.

### Plaintiff's Motion to Amend

Because Andy alleges facts that occurred subsequent to filing his original complaint, his motion is more accurately described as a motion to supplement, under M.R. Civ. P. 15(d), not a motion to amend under M.R. Civ. P. 15(a). Despite this confusion in terminology, the title is not dispositive. *See Hill v. Kwan*, 2009 ME 4, ¶ 17, 962 A.2d 963 (citing *Sherburne v. Med. Malpractice Prelitigation Screening Panel*, 672 A.2d 596, 597 (Me. 1996) (stating that how a complaint is labeled is not controlling)). Because the Maine Rules of Civil Procedure are to be liberally construed to achieve the "just, speedy and inexpensive determination of every action," M.R. Civ. P. 1; *see also Rancourt v. Bangor*, 400 A.2d 354, 356 (Me. 1979), "courts may disregard technicalities in terminology and construe a pleading based on its content," *Hill*, 2009 ME 4, ¶ 17. The rationale behind M.R. Civ. P. 15(d) is to spare a party the expense and aggravation of having to commence a new lawsuit when new events bearing on, related to, or arising out of the matters originally pleaded occur. *Rancourt*, 400 A.2d at 356. "Unless the party objecting to the supplemental pleading can show that his position will be prejudiced or that the litigation will be unreasonably delayed by the allowance of a supplemental pleading, the Court should ordinarily grant the motion. *Id.*; *see also New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20 (4th Cir. 1963).

Defendants, however, argue that the amended/supplemental complaint would be futile because, as a matter of law, Andy's claim for breach of an employment

5

contract cannot be based on the alleged oral promises that Andy was "secure for life" or until "the normal age of retirement." The Law Court has held that a court may deny a motion to amend based on: undue delay, bad faith, undue prejudice, or futility of amendment. *Montgomery v. Eaton Peabody, LLP*, 2016 ME 44, ¶ 13, 135 A.3d 106; *see also Glynn v. City of S. Portland*, 640 A.2d 1065, 1067 (Me. 1994) ("… when, as here, a proposed amended complaint would be subject to a motion to dismiss, the Court is well within its discretion in denying leave to amend.").

Even though, as noted above, Andy's motion is more accurately described as a motion to supplement the complaint instead of a motion to amend, the rationale behind the Law Court's *Montgomery* decision applies equally to both types of motions. Furthermore, although the Law Court's decision speaks only of motions to amend, at least a few Superior Court cases apply the futility rule to motions to supplement as well. *See, e.g., Francis v. Michael A. Bryant Prime Cut Meat Mkt.*, No. CV-09-248, 2010 Me. Super. LEXIS 56, at *1,2 (May 13, 2010); *Harriman v. Fleet Bank*, No. RE-02-007, 2003 Me. Super. LEXIS 20, at *19 (Jan. 30, 2003). If the Court finds the plaintiff's supplemental count to be futile, it is well within its discretion to deny the motion to supplement.

Given the deficiencies in Andy's amended complaint, the Court will exercise this discretion. As the Defendants rightly point out, the additional count fails to state a claim for multiple reasons. First, the complaint does not specify what type of contract Andy and the family farm had regarding his employment, and points to little in the way of supporting factual allegations for the claim that he was promised employment for life. Second, "[i]t is well established that a contract of employment for an indefinite length of time is terminable at will by either party." *Burnell v. Town of Kingfield*, 686 A.2d 1072, 1073 (Me. 1996). Given the fluidity of the employment contract even as stated in the supplemental complaint, it is entirely unclear that Andy was meant to be employed for a definite period of time, meaning that his

6

employment was likely at-will, and thus not subject to a breach of employment contract claim. Third, such an employment contract is subject to the statute of frauds, making an oral contract unenforceable before this Court. "To enforce a multi-year employment contract an employee must produce a writing that satisfies the statute of frauds or must prove fraud on the part of the employer." *Stearns v. Emery-Waterhouse Co.*, 596 A.2d 72, 75 (Me. 1991); *see also Popanz v. Peregrine Corp.*, 1998 ME 95, ¶ 5, 710 A.2d 250. Given that Andy alleges a multi-year employment contract with the family farm, his employment situation is exactly what the Law Court spoke of, meaning his employment was undoubtedly subject to the statute of frauds. For those reasons, therefore, the Court denies the Plaintiff's motion to amend/supplement the complaint.

Defendants' Motion to Dismiss

As noted above, Andy's original complaint contains six counts: Breach of Contract, Quantum Meruit, Unjust Enrichment, Promissory Estoppel, Intentional Interference with Prospective Economic Advantage, and Specific Performance. First, the Court notes that the two LLCs - Noyes Family Farm and Noyes Real Estate - were formed only after most of the conduct Andy alleges occurred. In addition, the two LLCs had only limited, if any, involvement in Andy's removal from the family business. As a result, the Court fails to see how the two LLCs can be liable for any of Andy's misfortunes, and will grant the motion to dismiss for all counts as against Noyes Family Farm, LLC, and Noyes Real Estate, LLC. The discussion that follows is limited to Defendants Charles and Mary Lou Noyes.

1.    Breach of Contract

First, the Chuck and Mary Lou argue that Andy's Breach of Contract claim must be dismissed because there was no contract to begin with. They argue that Mary Lou was offered no consideration as part of the Agreement, and her "offer" of transferring the family business to Chuck and Andy was simply an offer to make a

7

gift. *See, e.g., Whitten v. Greeley-Shaw*, 520 A.2d 1307, 1309 (Me. 1987). Whether or not there is a contract, including whether or not there is sufficient consideration, is a question of fact. *See, e.g., Guild v. Eastern Trust & Banking Co.*, 122 Me. 514, 524 (1923) ("… whether or not there was a consideration is a disputed question of fact."); *White v. Fleet Bank of Me.*, 2005 Me 72, ¶ 11, 875 A.2d 680 ("The Probate Court's determination that the parties entered into a binding oral contract is a finding of fact."); *W. v. Hussey*, No. BCD-CV-2016-30, 2018 Me. Bus. & Consumer LEXIS 60, at *8 (Dec. 6, 2018). Although the Statement of Agreement seemingly does not include any consideration for Mary Lou, that this is a factual determination suggests that it is inappropriate to decide this issue on a motion to dismiss. Because of this, the Court will allow this count to continue against Charles and Mary Lou Noyes.

2.   Quantum Meruit

Second, the plaintiff argues that there was an implied contract, and that as a result, there is a claim of quantum meruit. "A valid claim in quantum meruit requires: 'that (1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." *Paffhausen v. Balano*, 1998 ME 47, ¶ 8, 708 A.2d 269 (quoting *Bowden v. Grindle*, 651 A.2d 347, 351 (Me. 1994)). "While the formalities of an express contract are not a prerequisite to recovery in quantum meruit, there must be a reasonable expectation on the part of the claimant to receive compensation for his services and a 'concurrent intention' of the other party to compensate him." *Paffhausen*, 1998 ME 47, ¶ 9.

Chuck and Mary Lou argue that Andy's quantum meruit claim must fail because Andy was sufficiently compensated for his services of laboring on the farm. Indeed, quantum meruit claims are usually brought when the claimant has gone completely uncompensated. See *id*. (quoting *Colvin v. Barrett*, 151 Me. 344, 348, 118 A.2d 775 (1955) ("Quantum meruit may lie when 'there was not a clear

accession on both sides to one and the same terms,' if services are provided 'under circumstances that negative the idea that the services were gratuitous."). Damages in quantum meruit cases "are based on the value of the services provided by the plaintiff." *Paffhausen*, 1998 ME 47, ¶ 7; *see also William Mushero, Inc. v. Hull*, 667 A.2d 853, 855 (Me. 1995) (quantum meruit damages are equal to the reasonable value of the services rendered). While it is entirely possible that Andy was already sufficiently compensated for his services on the farm, it is not the Court's place to decide, especially on a motion to dismiss. Because Andy seemingly meets all the requirements of a prima facie case for quantum meruit, the Court denies the motion to dismiss as to defendants Charles Noyes and Mary Lou Noyes.

3.    Unjust Enrichment

Third, Andy alleges a claim for unjust enrichment. To establish a claim for unjust enrichment, three elements must be shown: "[One] a benefit conferred upon the defendant by the plaintiff; [two] an appreciation or knowledge by the defendant of the benefit; and [three] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *A.F.A.B., Inc. v. Town of Old Orchard Beach*, 610 A.2d 747, 749 (Me. 1992) (quoting *Estate of White*, 521 A.2d 1180, 1183 (Me. 1987)). "The trial court's conclusions on these elements are factual findings which will not be set aside as clearly erroneous unless there is no competent evidence in the record to support them." *Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1144 (Me. 1994). While claims for quantum meruit involve recovery for services or materials provided under an implied contract, "unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay, and the 'damages analysis is based on principles of equity, not contract.'" *Paffhausen*, 1998 ME 47, ¶ 6 (quoting *Aladdin*

9

*Elec. Assocs.*, 645 A.2d at 1145). Chuck and Mary Lou argue that because Andy did, in fact, have an employment contract with the family farm and then with the LLCs, he is barred from bringing this claim. *In re Wage Payment Litig. V. Wal-Mart Stores, Inc.*, 2000 ME 162, ¶ 20, 759 A.2d 217, 224 (A "contract of employment between the parties precludes the plaintiffs from maintaining a cause of action for unjust enrichment."); *Lynch v. Ouellette*, 670 A.2d 948, 950 (Me. 1996) ("The existence of a contractual relationship between Lynch and the Ouelettes precludes Lynch from recovery under an unjust enrichment theory."). It is certainly conceivable that, as this case moves along through the discovery phase, it will become apparent that Andy's unjust enrichment claim cannot survive. At this stage of the case, however, the Complaint alleges sufficient facts to make out a claim for unjust enrichment. The motion to dismiss as to this count will be denied.

4.     Promissory Estoppel

Fourth, Andy brings a claim of promissory estoppel. The Law Court has adopted the Restatement formulation of the doctrine of promissory estoppel: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." *See Panasonic Comm'cs & Sys. Co. v. State of Maine*, 1997 ME 43, ¶ 17, 691 A.2d 190, 195-96; RESTATEMENT (SECOND) OF CONTRACTS § 90(1) (1981). Promissory estoppel applies to promises that are "otherwise unenforceable." *See Panasonic*, 1997 ME 43, ¶ 17. Charles and Mary Lou argue that this claim must be dismissed for two reasons. First, they claim that the promise was insufficiently specific to be enforceable. *See Harvey v. Dow*, 2008 ME 192, ¶¶ 12-13, 962 A.2d 322 (stating that "general promises to convey land as a gift or inheritance" by itself is insufficiently specific to be enforceable under a theory of promissory estoppel); *Gagne v. Stevens*,

10

1997 ME 88, ¶ 13, 696 A.2d 411, 416 (holding that promissory estoppel failed when there was "no promise specific enough to enforce"). Second, Charles and Mary Lou, also citing *Harvey*, argue that any alleged promise did not induce sufficient action or forbearance on Andy's part to avoid the statute of frauds. They argue that because Andy, unlike the plaintiffs in *Harvey*, did not substantially improve or build upon the land in reliance on any promise, his claim of promissory estoppel must fail. Although these two arguments may fit well in the context of Andy's case, the Court will allow the claims to proceed and will deny the motion to dismiss because the promise that Mary Lou made, while involving land, was about much more than just land. She and Chuck promised that Andy would receive one-half of the *family business*, which included farmland, but also included various farm equipment, livestock and cattle, and even a large amount of liquid assets. And unlike promises to convey land, promises to convey a business and business property do *not* fall under the statute of frauds. Thus, because the Statement of Agreement was much more specific than a simple promise to convey a parcel of land, the promise is sufficiently specific to survive the Defendants' motion to dismiss.

5. Intentional Interference with a Prospective Economic Advantage

Fifth, Andy alleges intentional interference with a prospective economic advantage. This claim requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation, and (3) that such interference proximately caused damages. *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104. In proving tortious interference through fraud, the elements are: (1) making a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff. *Id.* ¶ 14;

11

*Petit v. Key Bank of Maine*, 688 A.2d 427, 430 (Me. 1996). Tortious interference through intimidation involves unlawful coercion or extortion. *Rutland*, 2002 ME 98, ¶ 16; *Pombriant v. Blue Cross/Blue Shield of Maine*, 562 A.2d 656, 659 (Me. 1989).

Chuck and Mary Lou argue here that Andy's complaint is insufficiently specific to survive their motion to dismiss, as it is "silent with respect to any facts that might, if true, constitute either fraud or intimidation." Furthermore, because the Complaint alleges primarily fraud, it must be pled with particularity. M.R. Civ. P. 9(b). The Court agrees that the Complaint is insufficiently specific or particular to survive the motion to dismiss. This section of the Complaint is brief, and alleges only vague or broad conduct by Chuck, namely that Chuck told Mary Lou lies about Andy's wife making "threats" and "other outrageous falsehoods." Otherwise, the Complaint only states that Chuck turned Mary Lou against Andy "through fraud and intimidation." This is barely more than simply stating "fraud," and does not pass the threshold required for pleading fraud with particularity. The Court agrees with the Defendants, and will dismiss this count.

6.    Specific Performance

Andy's final count asks for specific performance. Mary Lou and Charles argue that this is not a claim at all, but is rather a remedy, *see Infosecurus, Inc. v. Peterson*, 2017 WL 11094934 (Me. Super. Jan 27, 2017), and one that requires sufficient specificity in the contract so as to allow actual performance, *See Triple-A Baseball Club v. Northeastern Baseball*, 832 F.2d 213, 223 (1st Cir. 1987) (stating that specific performance may be ordered only where "the terms of the contract are clear enough to enable a court to fashion an appropriate order"). Because this is, indeed, a remedy that should be considered by the Court, and may be granted at the Court's discretion, *see Ludington v. LaFreniere*, 1998 ME 17, ¶ 7, 704 A.2d 875; *see also Brown & Sons v. Boston & Maine R.R. Co.*, 106 Me. 248, 255, 76 A. 692 (Me. 1909) (grant of specific performance "is uniformly deemed a matter of sound

12

judicial discretion,"), it should not be immediately dismissed. Despite the Defendants citing to *Infosecurus, Inc. v. Peterson* for the proposition that this count should be dismissed because of its nature as a remedy, that court actually denied the motion to dismiss the specific performance count in that case. *See Infosecurus*, 2017 WL 11094934 ("On the issue of whether or not a complaint for specific performance should be dismissed the Court notes that specific performance is a remedy and not a cause of action and accordingly the Court will consider the evidence that has been produced either in summary judgment fashion, or at an actual trial to determine whether a remedy is appropriate. That motion to dismiss is denied as well."). The Court denies the motion to dismiss this count as to Defendants Charles and Mary Lou Noyes.

It should also be briefly noted that Charles and Mary Lou argue that many of the counts Andy has alleged are internally inconsistent, i.e. that some require there be a contract while others prohibit a contractual relationship. It is true that breach of contract, quantum meruit, unjust enrichment and promissory estoppel require inconsistent elements, and a finding for one cause of action may exclude a finding for another. Because this is still the pleading stage, however, this argument fails. *See Architecture v. Drive*, BCD-RE-18-01, 2018 Me. Super. LEXIS 75 at *7 (March 27, 2018) ("Maine law allows a plaintiff to plead alternative, and even inconsistent, claims for relief.") *Id.*; *see also June Roberts Agency, Inc. v. Venture Properties, Inc.*, 676 A.2d 46, 49 & n.1 (Me. 1996) ("June Roberts, however, is not precluded from pleading both theories because a factfinder may find that no contract exists and may still award damages on the theory of unjust enrichment.").

13

## CONCLUSION

The entry is:

Plaintiff Andrew Noyes' Motion to Amend/Supplement the Complaint is DENIED. Defendants' Motion to Dismiss is GRANTED in part, and DENIED in part. All counts are dismissed as against Defendants Noyes Family Farm, LLC, and Noyes Real Estate, LLC. Count V is dismissed as against Defendants Charles Noyes and Mary Lou Noyes. In all other respects, the Defendants' Motion to Dismiss is DENIED

The clerk is directed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: February 21, 2020

_____
William R. Stokes
Justice, Superior Court

14